## MORELAND *v.* PAGE.

In re-establishing a lost survey, course and distance must yield to fixed monuments.

All ascertained surrounding monuments must be allowed their due weight in determining the locality of the unascertained, under the system by which the survey was originally made.

Where on a line of the *same* survey between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking sub-divisional tracts, we are not permitted to *presume* that the variance arose from the defective survey of any *part*, but must conclude, in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the *whole* line, and distribute such variance between the several sub-divisions of such line, in proportion to their respective lengths.

Unknown corners must be found by the corroborative testimony of *all* known corners, with as little departure as may be from the system adopted on the original survey, without giving preponderance to the testimony of any one monument above another.

*Appeal from the Dubuque District Court.*

THIS action was commenced by Moreland against Page, on the 8th day of April, 1854. The petition alleges that the plaintiff is the owner of the east half of the south-west quarter, and the west half of the south-east quarter of section four, in township ninety, north of range three west, and of right entitled to the possession of the same; that the northern boundary of said lands, is a line surveyed by Joel Bailey, as per diagram marked "B," that the defendant, Page, is in possession of so much of said lands as lie between lines marked " A. B.," and " C. D.," as shown by said diagram ; and that the defendant claims to be the owner of the land so by him possessed, and claims that the said line marked " C. D.," on said diagram " B.," is the proper line between plaintiff and defendant. The answer of the defendant denies that the line claimed by the plaintiff is the true boundary, and insists, that the line marked " C. D.," on said diagram " B.," is the true line of boundary. The District Court found in favor of the plaintiff, and rendered judgment accordingly, from which the defendant appeals, and assigns the rendition of the same for error. The facts of the case, are fully stated in the opinion of the court.

*H. A. Wiltse* and *Clark & Bissell*, for the appellant.

Both parties claim under patents from the United States, both have introduced their patents as evidence of the lands owned by them, respectively, and the rights of the parties are to be determined by the description contained in the patents. 3 Pet. 96.

The patent description is a certain subdivision, containing a given number of acres, " according to the official plat of the survey of the land returned to the general land office by the surveyor general." The plat thus incorporated by the patent, is made from the field books of the deputy surveyors (see 2d sec. of act of 18th May, 1796), and is the official record and best evidence of the survey, and is that description by which plaintiff holds. 3 Pet. 96 ; 17 Mass. 207.

# (B.)

## PART OF TOWNSHIP 90, NORTH RANGE 3 WEST, 5TH MER.

*as Originally surveyed in 1837, and as Patented.*

Sec. 1  Sec. 2  Sec. 3  Sec. 4  Sec. 5  Sec. 6

Sec. 7  Sec. 8  Sec. 9  Sec. 10  Sec. 11  Sec. 12

As found upon a Resurvey by the U. S. in 1852.

Sec. 1   Sec. 2   Sec. 3   Sec. 4   Sec. 5   Sec. 6

Sec. 12   Sec. 11   Sec. 10   Sec. 9   Sec. 8   Sec. 7

Page
Moreland
Montgomery
McMahan Corner

NOTE: The dotted line A.B. is the "Joel Baily" line claimed in petition. The distances undotted sweep are the "Joel Baily" measurements.

Plaintiff seeks to impeach this record, by denying that a survey was actually made, but his patent closes his mouth. See act of 11th of February, A.D. 1805; Land Laws, part 1st, p. 119. Is it competent for a state court to impeach a United States record, thus sanctioned? Admit that the record can be impeached, and that the survey is shown never to have been made in fact, and it follows incontrovertibly, that the president had no authority of law to sell this land, and the words of grant in plaintiff's patent, become inoperative, because combining no description, and the grant is therefore void; plaintiff has no title in an action, where, if he recovers, it must be upon the strength of his own title. 5th section of act of 18th May, 1785, Land Laws, part 1st, p. 32; 9th Watts, 117.

But in the view of the defendant, the record of the United States surveys, when incorporated into the patent, lose the exclusive character of, and cease to be, for the purposes of that patent, a record or a survey. It becomes simply a description of land sold, and as between grantor and grantee, or as between any claiming under them, subserves no other purpose. The patent in the present case describes the land conveyed, in three ways, by marked lines, by monuments at the corners, and by courses and distances. It is admitted, that neither the marked lines nor the monuments, are to be found; we are, therefore, compelled to fall back upon the courses and distances, as the best and only evidence of the boundaries of the land sold. 3 Pet. 96; 4 Wheat. 444.

This is equally true, if the lines and monuments described in the patent, were in fact never actually made upon the ground. 1 U. S. Dig. 475, or 2 Dana, 2; 4 U. S. Dig. 352, § 131, or 9 Dana, 338.

At most, the absence of marked lines and monuments, can only show that part of the patent description is false; but if that part which is true constitutes a valid description, by which the land can be identified, the addition of other circumstances which are false, will not frustrate the deed. 7 Johnson, 217; 4 Mass. 205; Comyn's Dig. Fait (E. 4), 288.

But the plaintiff offers in evidence the instructions of the surveyor-general, governing the deputies of that day in making their original surveys, and proposes to ascertain his land, by surveying, in accordance with those instructions, as in an original survey. We submit this is not evidence as to any matter legitimately before the court. Plaintiff does not hold under the instructions of the surveyor-general, but under a patent from the United States, and the only subject of inquiry legitimately before the court, is to ascertain, not such lines as accord with the instructions of the surveyor-general, but such lines as coincide with the boundaries described in his deed. Plaintiff does not pretend that such line as he proposes to run out, would coincide with the boundaries described in his patent; he does not design, it is not his object, to run such line; he seeks to establish such lines as agree with the instructions referred to; such lines it may be, as the original surveyor *ought* to have at first established, but such as are perfectly independent of, and have no reference to, the description in his patent. Possibly showing where a line *ought* to have been placed, is, under some circumstances, competent evidence to show where it actually *was* placed; but as in the present case, plaintiff denies that such lines *were* ever run, he cannot intend to offer this evidence to show *where* they were run. These instructions are not referred to in the patent; they establish the boundaries by a method independent of, and not contemplated by the patent; they are, the refore, not competent to vary or affect rights under it, and can have nothing to do with, and no place in, this case.

In seeking to fix upon the ground, the boundaries described in the patent, we meet with the following facts: The corners of sections in the north town line, are ascertained and identified.

The monuments identifying the corners on the east and west line, dividing the two northern tiers of sections, except the corners in the range line, and the corner of sections 5, 6, 7, and 8, are missing.

The monument identifying the corners on the north and

south lines, between the corner of sections 9, 10, 15, and 16, the quarter section corner of 8 and 9, and the north town line, are missing.   Also, all evidences of any marking of the lines described, is wanting.   The calls of the patent for marked lines and monuments, being unanswered, the courses and distances of the patent are the only means at command, by which to identify the land conveyed.   How shall these lines and courses be established, or re-established, so that the courses and distances of the patent shall be followed ?

The line in dispute, is simply that dividing the north half from the south half of section four, yet as in the patent it appears, not as an independent line, but as one connected with and bearing certain specified relations to other lines, it is manifest that, in now fixing the locality of the line, the same connections and relations should be carefully preserved. This line must, therefore, be established with reference to the whole of the other adjacent unidentified lines and corners, because it is a part of a survey, which in connection with the other lines in the township, constitutes a whole.

The subdivision of a township into sections, is a series of meridian lines one mile apart, with east and west lines at the same distance, crossing them at right angles.   See 4th paragraph of the ordinance of 20th May, 1785, Land Laws, pt. 1, 11; act of 18th May, 1796, § 2, Land Laws, pt. 1, 50 ; act of 11th Feb., 1805, § 1, Land Laws, pt. 1, 119.   The map of this township so represents the original survey in this case.   Consequently, there is ever an existing monument at both ends of any line or boundary upon which monuments are lost.   In a straight line between these existing monuments, missing ones are to be established.

Applying this rule to the case before the court, we necessarily run the very straight line represented by the map incorporated into the patents of the parties, between the existing corner in the east boundary, and the recognized corner to sections 5, 6, 7, and 8.   Then commencing at the corner sections 9, 10, 15, and 16, we run to a point in the north boundary of the township, seven links west of the corner to sections 33 and 34, establishing the corner to sections 3,

4, 9, and 10, at the intersections of these right lines. Then beginning at the quarter section corner between sections 8 and 9, run a line that will intersect the north boundary of the township, at a point sixteen links west of the corner to sections 32 and 33, establishing the corner to sections 4, 5, 8 and 9 at the intersection of the lines, in manner aforesaid. Then the distance between these ten sections corners, thus established, and the north boundary, being known, the quarter section corners on the east and west sides of section 4, are to be established at those points respectively, which will give to that part of the lines lying both north and south of these corners, the same relative proportion of length as is given to them by the official map.

The lines thus established, not only conform precisely to those represented upon the official map, but precisely answer the rule of law prescribed by second section of the act of Congress of 11th of February, 1805, "by running straight lines from the established corners to the opposite corresponding corners." It coincides with the system, and preserves the harmony of the surveys.

On the other hand, the mode insisted upon by the plaintiff, has no sanction in the patent under which he holds, is at war with the soundest principles of law, and in direct contravention with the letter and spirit of the act of 11th of February, 1805; it violates the vested rights of the defendant, subverts a simple and beautiful system, and introduces in its place, the veriest uncertainty and confusion.

*Smith, McKinlay & Poor*, and *T. Davis*, for the appellee.

This is an action at law, and as the court has appellate jurisdiction in chancery cases *only*, of course, no errors on questions of fact will be examined. We will assume the fact, which the evidence tends strongly to prove, that there never was a survey made of those parts of the township where no corners can be found; that, to use the words of the department at Washington, the survey was "imaginary and fraudulent;" and that the finding of the issue for the plaintiff, settles this question of fact conclusively. The

Moreland v. Page.

court had a right to order a survey. Code, §§ 2021 and 2022. As the original survey was only done in part, the balance being "imaginary and fraudulent," the court ordered the survey to be on the same plan that it should have been; to commence where the government surveyor left off, and carry out the original plan, according to the acts of Congress, throwing the fractions on the north and west. There is no dispute, but that that system will produce the line we contend for. The issue of fact on that point, is conclusive. The only question is, whether this was the legal mode, remembering that this land was never surveyed by the government. This, then, is an original survey. The court now orders that to be done now, in the same manner, that it should have been done in the first place. The act of Congress of May 10th, 1800 (Public Land Laws, 71, § 3), provides: "And in all cases, where the exterior lines of the townships, thus to be subdivided into sections or half sections, shall exceed, or shall not extend, six miles, the excess or deficiency shall be specially noted, and added to, or deducted from, the western or northern ranges of sections or half sections, in such township, according as the error may be in running the lines from east to west, or from south to north." See, also, a copy of the instructions of the surveyor-general, filed as part of the record in this case. The work must be commenced at the first known corner south, and run north; and in the words of the above act, the subdivisions which are not fractional, must have their "complete legal quantity." It is the fractions that must stand the deficiency. These acts of Congress were, as they purport, made to provide for the *disposition* and sale of the public lands. When these lands are once sold, and the purchaser gets a patent for a "complete legal quantity," called a quarter section, the United States and its officers, have no right to order another survey, on a new principle, that will take away part of that "complete quantity," which the act of Congress and the patent insures him. The surveyor-general and the general land officer, have neither the power to *adjudicate* on the equities; nor to repeal the act of Congress;

nor to curtail the " complete quantity ;" nor disturb vested
rights.

IsBELL, J.—This was an action of right brought to settle
the north boundary line of the east half of the south-west, and
west half of the south-east quarters of section four, township
ninety, north of range three, west of the fifth P.M. situate
in Delaware county. Defendant is the adjoining owner on
the north. A strip of land about three chains in width,
claimed by both parties, constitutes the subject of the con-
troversy. The dispute grows out of the fact of the original
survey of a large part of the northern two ranges of sections
in this township, having been either defectively or fraudu-
lently made. This survey was made in 1837, and in 1849,
complaints having reached the commissioner of the general
land office, that the marks and monuments called for in the
original field notes of the survey of the north part of this
township, had not been found, and probably had never been
made, and that the distances from the corners which existed
to the north boundary, were not as great as represented in
the plat and field notes of the original survey, said commis-
sioner caused an accurate examination of the whole township,
to be made by an experienced surveyor. This examination
discovered that many of the sub-divisional corners could not
be found, and that they had probably never been established,
as the quantity of land in the north two ranges of sections,
was less than represented by the original notes, and the topo-
graphy, in some instances, was at variance with the calls ; as,
for example, corners which were represented, as in timber,
were where there had never been any timber. By this ex-
amination, all the section corners on the lines bounding the
north two ranges of sections, and that at the north-east of sec-
tion seven, were found. Also, all the quarter section corners
on the west lines of the following sections, viz.: 6, 7, 8, and
9, and that on the south line of section 11. No other monu-
ments or subdivisional marks were found, and those situate
on the south line of these two ranges were not accurate, as
called for in the field notes of the original survey. The sev-

eral ascertained and unascertained corners will be readily understood from the attached plat.

In April, 1852, said commissioner, having become satisfied from the examination, that the survey had been defectively made, though after the purchase by the parties to this suit, and after the sale of most of the land in this township by the United States, caused a re-survey of the whole township, under the instructions of the surveyor-general of Wisconsin and Iowa, by Edward James, jr., deputy, who had been detailed for that purpose.

These instructions bear date April 12, 1852, and so far as material are as follows: " Commencing in the manner prescribed in the accompanying instructions " (which instructions were the general printed instructions of the surveyor-general of Wisconsin and Iowa, to his deputies in making government surveys of the public land, and the same under which the survey had been originally made), "you will proceed to retrace the lines of the existing survey from corner to corner, and wherever the same are found, and can be fully identified, as those established by the original surveyor, you are to affix thereto your own official marks of recognition, and from said corners you will run, mark, and re-establish the lines and corners for the residue of the township."

· " In surveying between recognized corners at remote distances apart, you are to random from corner to corner, and correct back, distributing the excess or deficiency, as the case may be, equally, so that each section may receive its due proportion of either."

The line between plaintiff and defendant, as ascertained by this mode of survey, falls south of that claimed by plaintiff, about two and one-half chains.   It will be observed by a careful examination of the description of the found corners, as hereinbefore given, that the *quarter* section corner on the west line of section nine, and the section corner at the southeast of said section, are corners found and identified on the examination, and the same were recognized on the re-survey. The decision of the court below, was, in substance, that the dividing line between the parties should be fixed and estab-

lished, by measuring north from these two ascertained cor-
ners, lines parallel with the east line of the township, from
the first described corner eighty, and the last one hundred
and twenty chains, and that a right line between the points
attained by such measurement, constituted the true line be-
tween the parties. This mode of survey, finds the line
claimed by plaintiff and appellee in this suit.

It is claimed by defendant, that the true mode of ascertain-
ing the line in dispute, is by running right lines from the
starting points assumed by the court below, to the found cor-
ners at the north-west and north-east corners of section four,
and also a right line from the found corner at the north-east
corner of section seven to that of the north-east corner of
section twelve; that the points of intersection of these lines,
will establish the true corners of sections 4, 5, 8, and 9, and
also, sections 3, 4, 9, and 10; that having thus ascertained
the *section* corners, the *quarter* section corners on the east
and west sides of section four, should be placed at those
points respectively, which will give to the parts of the lines
lying both north and south of these quarter section corners,
the same proportion of length which was given to them by
the original survey as returned; and that a line drawn be-
tween these quarter section corners, thus established, consti-
tutes the true line in dispute. By this mode, a line is found
something near a chain south of the one as established by the
re-survey.

Both parties have introduced their patents in evidence,
and both have relation to the original survey. Neither
party claims any advantage, on account of priority of pur-
chase. The title of neither to the land on his side of the
*true* line, is disputed. The sole question then is, what is the
true line between the parties? Did the court below deter-
mine the true line? We think not. Here is a large body
of land, comprising nearly two ranges of sections, on the
north part of the township, on which no subdivisional
monuments can be found. Of this body of land in *gross,*
there is less in quantity than is called for in the original sur-
vey. Yet we are, as between the parties here, to regard it

Moreland v. Page.

as a lost survey, and not as never having been made. It must be restored. But upon what principle the court should determine, that the plaintiff was entitled to carve out of this body of land, made up of numerous subdivisional tracts, the full quantity which his patent called for by actual measurement, and leave others, who had purchased other subdivisional tracts of the same body, under the same conditions with himself, a deficiency, we are at a loss to determine. Had this body of land, on which there are no monuments found, exceeded, instead of falling short of, full measurement according to the original survey, the purchasers of the specific tracts included in this body, would have been sharers of the excess in due proportion, and the plaintiff, with others, to his proportion. On the other hand, he should share the deficiency. But it is said, that fractions in subdividing townships, all fall on the north and west sides of the townships. That is true in making an entirely new survey; but this survey is not an original one; it does exist, at least on paper. The purchases have all been made in relation to it. The purchaser of a fractional forty acre tract, located on the north or west side of the township, to the extent of the quantity designated in that fraction on the plat, and by the field notes of the original survey, purchased as *definite and determined a quantity* of land, having *as fixed and determined relations to the whole tract*, the survey of which is now lost, as did any one who purchased those several tracts not designated as fractional. The person who might purchase a tract on the north side of the township, designated on the official plot of the original survey as containing thirty-nine acres, had *as perfect a vested right* to receive thirty-nine full acres, as he who purchased a quarter section in any other part of this body, had to the hundred and sixty acres called for by his patent. If this is true, it follows that the line established by the court below, is not the true line; for it gives full measure from south to north to the plaintiff, while, by so doing, it leaves to the defendant less length of line from south to north, by two and one-half chains, than he would have had, after sharing his proportion of the general defi-

ciency. Neither do we think the line contended for by the defendant, the true line. The fallacy involved in the reasoning by which it is sought to be supported, we think, consists in this : *First*, it assumes that this survey was *theoretically* correct. *Secondly*, that certain *individual* monuments are absolutely correct and unimpeachable, namely, those at the north-east and the north-west of section four ; that at the south-east of section nine ; the quarter corner on the west line of section nine ; that at the north-east of section seven ; and that at the north-east of section twelve ; while it leaves out of sight other monuments having an influence upon the conclusion to be arrived at, which are equally correct and unimpeachable. And, in addition to this, it ignores the practical mode of making these surveys by the government. It is true that defendant claims, that the general printed instructions under which the township was originally surveyed, are not to be considered; because, he says, his purchase is in relation to the plat and field notes, and not the instructions under which the survey was made. We cannot entertain this view ; for in the first place, it is equally true of the purchase of any other subdivision within this area, the subdividing monuments of which are not found ; and secondly, the provisions of the law regulating the manner the public lands shall be surveyed, showing the relations which one tract shall bear to another, and how the several tracts shall be designated, as that it shall be laid off into townships by certain lines, subdivided into sections, those sections into quarter sections by a uniform mode, those townships and sections numbered in a particular manner, &c., with *the general instructions from the proper department, pointing out the practical* manner in which these townships and their subdivisions shall be surveyed ; the field notes and plats officially made, certified and deposited in the proper repository ; all necessarily enter into the consideration, in attempting to restore a lost survey made under them. They together, to speak figuratively, constitute the domesday book of our western states. The dominion of every landholder has relation to them, and without here deciding that this court

Moreland v. Page.

will take judicial notice of these general instructions, for it is unnecessary, they having been introduced in evidence, yet we have no hesitation in saying, that they are proper here to be considered. We say, then, that the defendant in his reasoning, leaves out of sight monuments that have an influence in the conclusion to be arrived at.

Without citing these general instructions at length, we think this will readily be appreciable, when we take into consideration the fact, that the interior section lines, east and west, through the township, are not right lines drawn across the whole township, but any given one of these lines, is made up of a series of closing section lines, each to some extent independent of the others. These several section lines may, by a remote possibility, constitute a right 'line across the township. If practical surveying could be made as perfect as theoretical, they might form a straight line, but the difference between theory and practice is such, that the fact is, they seldom if ever do; while, on the contrary, each line across the township, from east to west, dividing sections, generally has as many distinct courses as there are sections lying on either side of it. Yet, nevertheless, on the principle of subdividing townships adopted by the government, any one of these lines east and west through the township, so made up, whether straight or crooked, constitutes, in *effect*, the *base* line for the survey of all the land lying north of it in the same township; or, to speak more accurately, each separate south section line, is in fact, the base line for the survey of the section lying north of it. Now, the line on the south side of these two tier of sections is found. Its section corners are all marked. It is not, in *fact*, a straight line, but that part of it which bounds any one of these sections, on the south, is, in fact, the base line for the survey of the land lying north of it, and must necessarily influence the survey of all the land lying north of it to the township line. But the line from the north-east corner of section seven to that of section twelve, the intersections of which defendant claims, marks the true southern corners of section four, is a straight line. While that on the south boundary of the sections

which this straight line marks on the north, is not straight,, yet the south line is .the base from which the other, if ever made, must have been made. The one maintains uniformly the same course for five miles, while the other, which should be the base, and this a parallel, so far as practice may coin-- cide with theory, does not maintain the same course through any two consecutive miles. The monuments all along this line, and all the other monuments all around this body of land, the subdivisional monuments of which are not found, are as absolute, unimpeachable verities, as the two adopted by the court below, or the *six* claimed by the defendant. The several tracts of land on the plat, in relation to which, the several purchases were made, are each as fixed, and have each as determined relations to each other, and to each of these monuments, as they do to any one of those claimed by defendant. The unknown corners must be found by the corroborative testimony of *all*, with as little departure as may be, from the system adopted on the original survey, without giving any preponderance to the testimony of any one monument above another. In doing this, courses and distances, which are the elements of superficial *measure*, must yield to the facts, namely, the established monuments. In other words, to use a homely adage, the several garments must be cut according to the cloth.

We do, therefore, adopt the mode of survey in restoring these corners, laid down by the surveyor-general of Wisconsin and Iowa, in his instructions of April 12th, 1852, to Edwin James, Jr., under whom the resurvey was made,. which instructions have been herein recited. We do not, however, adopt this mode of survey, on account of any authority which any of the departments of the general government has to interpose after the sale of these lands by it, to settle the boundaries between the parties; but for the sole reason, that we deem the principles contained in the instructions, the true principles recognized by the law in like cases. We have carefully examined the authorities cited by counsel, and are satisfied that they contain nothing that conflicts with the principles in these instructions. We understand

Moreland v. Page.

these principles to be, first, the familiar, though cardinal one, that course and distance must yield to fixed monuments. This principle is no more familiar in law, than in practical surveying. The surveyor employed to subdivide a township, commences to practice upon it the second line he runs, and continues to do so every second or closing section line through the whole township. To illustrate: he commences one mile west of the south-east corner of the township, having adjusted his compass to correspond with the last line; he runs north a mile and east a mile, but he fails, unless by a very rare occurrence, of exactly striking the mound established one mile north of the south-east corner of the township, but he only makes the line accommodate itself to this monument in length and bearing, and continues to do so at the closing of each section throughout the township.

The second principle, we understand to be, that all ascertained surrounding monuments shall have their due weight, in determining the locality of the unascertained, under the system by which the survey was originally made. Thirdly, that where on a line of the *same* survey, between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking subdivisional tracts, we are not permitted to *presume* merely, that a variance arose from the defective survey of any *part;* but we must conclude, in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the *whole* line, and distribute such variance between the several subdivisions of such line, in proportion to their respective lengths.

It has been urged by plaintiff, that this is not a *lost survey*, but that a survey has never been made. To adopt this view, would be to defeat his entire title. His patent has relation to a survey which, if it never existed, leaves him without description in his grant. We cannot conclude that there never has been a survey, though it should have been merely imaginary, so far as the interior lines of these two ranges of sections are concerned. For, although imaginary, it has been platted and numbered, and incorporated into the sev

eral grants.  The purchasers of all the subdivisions numbered on that plat, have purchased with relation, not only to the monuments, but to the township, range, sections and subdivisions of sections, *as shown by the plat.*  And now, as between these purchasers, it would be an enormity to entirely disregard it.

The judgment of the District Court is reversed, and the District Court is directed to proceed to enter judgment in accordance with this opinion.