### William V. Mosher *versus* Daniel Berry.

If the lands lying between known monuments or boundaries, be conveyed at the same time by distances, whether in equal or unequal proportions, to different grantees in severalty, there being no intermediate monuments or other means of ascertaining the location, and the distances do not correspond with those named in the deeds, they will hold in proportion to the widths respectively granted by the deeds, whether there be an excess or deficiency in the distance.

In such cases, it is competent to prove that the location was in conformity to an established custom of giving a particular measure, whether large or small, in locating the territory.

THIS is a writ of entry, to recover the possession of a strip

of land about five rods in width, being the northerly part of the following parcel of land, and extending the whole width thereof, viz. : part of check lot No. five, in the fifteen mile lot A 1, and bounded as follows: easterly and westerly by the side lines of said check lot, southerly by a line parallel with the north line of said fifteen mile lot and distant therefrom southerly one hundred and twenty-eight rods, and northerly by a line parallel with said north line of A 1, and distant therefrom southerly sixty-two rods, containing forty-one acres and one quarter, more or less.

The demandant read a deed from B. Goodwin and others, dated the ninth of Dec. 1818, to Washington Mosher, describing the said premises in the language of said writ. Also other deeds conveying the premises by several mesne conveyances to the demandant in 1841.

*Samuel Goodridge,* testified, that he run the north line of said fifteen mile lot, A 1, beginning at a monument in the line two miles west of the premises ; he measured southerly from this line sixty-two rods, named in the deed, and it did not reach the fence now maintained between the parties, by between three and four rods; was present when Mr. Chandler went on to make his survey and shew him the monument on the line from which he started.

*B. F. Chandler,* surveyor appointed by the Court, testified, that he started from the monument, shown by Goodridge, and run the course of the *wall,* south 65° 50' east, he measured sixty-two rods south from this line, and found that distance to end north of the present fence about ten rods. This course is not the true course of fifteen mile lot, the ancient course being $67\frac{1}{2}°$. The present course to run that line is 65° 15'. The parties then agreed upon a monument, from which he should run the line. He run accordingly, and measured down the sixty-two rods, and found it four rods north of the present fence.

*Moses Chute* testified, that he knew where the north line of fifteen mile lot was, and that Chandler began at a correct monument in running his east line.

The respondent read a deed from Benjamin Goodwin and others, dated the ninth day of December, 1818, to the said respondent, of a certain parcel of land in said Rome, part of check lot No. five, in the fifteen mile lot A 1, bounded as follows: easterly and westerly by the side lines of said check lot, and southerly by a line parallel with the north line of said fifteen mile lot, and distant therefrom southerly, sixty-two rods, and northerly by a line parallel with said north line of A 1, and distant therefrom southerly thirty-two rods, containing eighteen acres and three-quarters more or less.

Respondent introduced proof tending to show that he had had the demanded premises in his possession for more than twenty years.

*Elihu Stevens*, for respondent, testified, that there are two lots between the demandant's lot and the north line of the fifteen mile lot ; that he measured across respondent's lot and found it to be thirty-one rods wide, and that the lot lying north of respondent's lot and between it and line of fifteen mile lot, is about three rods wider than the limits named in the deed of the same, and that demandant's lot is about four rods wider than the number of rods mentioned in his deed.

The jury were instructed that they might ascertain from the testimony, where the true north line of great lot A 1 was established ; and that the northerly line of the demandant's land, in the absence of any monuments establishing it, would be found parallel and distant sixty-two rods from it, in a southerly direction, if this were not prevented by other considerations. That they would notice the time when the admeasurements were made, and from that and the other testimony, would consider whether large measure was made. That if they were satisfied that the southerly line of the demandant's land was established, and that there was in fact a greater number of rods between that line and the north line of great lot A 1, than were named in the conveyances, the overplus should be divided between the three lots lying between them in proportion to the width of those lots respectively.

To these rulings the plaintiff excepted.

Mosher *v.* Berry.

Sketch, showing the demandant's claim.

North line of 15 mile lot A 1.

The strip in controversy lies between the dotted line and the black line _A. B.

B    Tenant's land.   32  30  128  A

Demandant's land.  66

West line of Check lot.

East line of Check lot.

South line of 15 mile line A 1.

*Morrell,* for demandant.

The rule given to the jury by the presiding Judge, by which they should find the demandant's north line, is deemed to be correct ; but the qualifications which accompany it, and by which it is modified and limited, are considered erroneous.

The demandant is entitled to have his north line established at a point precisely 62 rods south of the north line of great lot A 1.

The demandant's deed establishes his north line at that distance.

The respondent's deed fixes his south line at same point.

The respondent maintains his fence and has the possession about four rods south of that point. Did the proof authorize the instructions by which the jury were permitted to vary that point ?

The Judge instructed the jury, " that they would consider whether large measure was made."

But there was no proof of any admeasurement at the time when Goodwin's deeds were made.

It did not appear that demandant's south line is established.

The demandant, if his south line encroaches upon his neighbor at the south, may be compelled to remove north within his proper limits.

Mosher *v.* Berry.

The Court further say, "If there were in fact a greater number of rods between demandant's south line and the north line of great lot, than were named in the conveyances, the overplus should be divided between the three lots lying between, in proportion to their width."

This it will be seen, leaves all the surplus on the south of demandant's south line, and belongs not to the tenants or original grantees, or either of them, for the terms of the conveyance exclude it, but belonged to the proprietor, leaving to him all that should not be found to fall *within their limits;* and if there is a surplus, it cannot be a question between the original grantees of these lots, but between the demandant and the proprietor of the original lot, if he has got possession of more than was conveyed, by having extended his south line.

The Judge adverted to other testimony as to the measurement. But there was no such " other testimony."

This was clearly erroneous, as it was plainly calculated to impress the jury that there was *evidence* of an original admeasurement, and the time when made, and that there was " other testimony" all tending to show large measurement.

The Judge told the jury, " that if they were satisfied the southerly line of demandant's land was established," &c.

It is contended the *north line* of demandant's land must be established, independent of the south line, as it may now appear, for its present condition, (south line) may not be in conformity to the original grant, but may have been acquired by demandant, by purchase, possession or otherwise, as might perhaps have been shown, if it had been subject of controversy.

*Paine,* for the tenant.

The Judge instructed the jury, that if they were satisfied where the north line of great lot A 1 was, and where the south line of demandant's lot was, and that between the two there was a greater number of rods than that named in the conveyances, the overplus should be divided among the owners of the three lots, according to their width.

Can any other rule be adopted ?

If the south line of plaintiff's lot be ascertained and estab-

lished, there is as much propriety in measuring from this line northerly to find his north line, as there would be in measuring from the north line of great lot A 1, southerly.

Each one of the lines is as much a starting point as the other. The demandant's north and south lines are sixty two rods apart *by his deed*.

This mode of measuring would leave the strip of land in dispute, north of the demandant's true north line. If it belongs to the original proprietors, the action must fail. But the original grantors intended to convey all the land they owned between the south line of demandant's lot and the north line of great lot A 1.

Under very similar circumstances the same rule has been applied and the application sustained. *Brown* v. *Gay*, 3 Greenl. 126.

If the south line of demandant's lot had been established, the principle applied by the Judge was quite as favorable to him as he had any right to expect.

The demandant complains that there was no proof touching the actual location of the demandant's south line. A bill of exceptions is not required to state *all* the evidence.

Further, the testimony of Stevens, as recited in the bill, did tend to establish the demandant's south line. He says, he measured the demandant's lot. He could not have measured the lot if he had not known the boundaries. If it were the possession which he measured, the demandant's possession is to say the least, some evidence, and might, in the absence of proof to the contrary, be satisfactory to the jury.

It is suggested that there was no proof of large measure having been made. These deeds were made in 1818. Is it not a historical fact, that it was customary to make large measure at that period? And might not the Judge well call the attention of the jury to such fact, in the absence of express proof?

*Morrell,* in reply. — The boundary lines of lots, are not of such a nature, as to render " historical facts" admissible. Historical notoriety of a *fact,* is not sufficient to found a judg-

ment upon. The notoriety of the *law* is otherwise. 1 Stark's Ev. 62; 2 Bouv. Law Dictionary, 230.

HOWARD, J. — To test the correctness of the instructions, it is important to consider the respective claims of the parties, as stated in the exceptions. They owned adjoining tracts of land, and their titles originated from the same source, and at the same time, (Dec. 18, 1818.) The case arose, and was contested, upon the position of the dividing line between these lands. This would be the north line of the demandant's, and the south line of the tenant's land. In the deed from Goodwin & als. to those under whom the demandant claims, his south and north lines are described as parallel with the north line of the fifteen mile lot, A 1. The former as being one hundred and twenty-eight rods, and the latter sixty-two rods distant from it. In the deed from Goodwin & als. to the tenant, of the same date, his south and north lines are described as parallel with the same north line of the fifteen mile lot A 1, and distant from it sixty-two rods, and thirty-two rods, respectively.

The jury were instructed, " that they might ascertain from the testimony, where the true north line of the great lot, A 1, was established ; and that the northerly line of the demandant's land, in the absence of any monuments establishing it, would be found parallel, and distant sixty-two rods from it, in a southerly direction, if this were not prevented by other considerations. That they would notice the time when the admeasurements were made, and from that, and the other testimony, would consider whether large measure was made. That if they were satisfied, that the southerly line of the demandant's land was established, and that there was in fact a greater number of rods between that line and the north line of great lot, A 1, than were named in the conveyances, the overplus should be divided between the three lots lying between them, in proportion to the width of those lots respectively."

It is a general rule, in the absence of monuments, that the

distances, named in a conveyance, will govern in ascertaining
the location of the land.   But this rule is subject to qualifica-
tions, and is not always inflexible.   Where the lines were
actually run at·the time of the conveyance, though boundaries
were neither named nor fixed, and the parties soon afterwards
established monuments, intending to conform to the location;
or where they immediately take possession and occupy with
such intention, openly, uninterruptedly and exclusively for
more than twenty years in succession, such monuments, or
occupancy, would govern the extent of the location, although
not coinciding with the distances named in the deed.   Un-
der such circumstances it would be competent to prove that,
in the location, large measure was in fact actually made;
or that the location was made in conformity with an estab-
lished custom and usage, existing at the time, of giving a
particular measure, in locating the territory under considera-
tion.

So if conveyances of land, between certain boundaries, are
made to grantees in severalty, by distances, and in different
proportions, but covering the whole extent, without intermedi-
ate monuments, and without other means of ascertaining the
location, and the distances do not correspond with those
named in the deeds, they will hold in proportion to their re-
spective grants, whether there be an excess or deficiency in
the distance.   *Davis* v. *Rainsford,* 17 Mass. 210; *Bancroft*
v. *Makepeace,* 12 Mass. 469; *Wyatt* v. *Savage,* 11 Maine,
429; *Loring* v. *Norton,* 8 Maine, 61; *Emerson* v. *Tarbox,*
9 Maine, 42; *Moody* v. *Nichols,* 16 Maine, 25; *Rust* v.
*Boston Mill Corporation,* 6 Pick. 158; *Proprietors of Ken-
nebec Purchase* v. *Tiffany,* 1 Maine, 219; *Brown* v. *Gay,*
3 Maine, 126; *Clark* v. *Wethy,* 19 Wend. 320.

These doctrines were embraced in the instructions, and the
presiding Judge correctly stated principles, leaving the ap-
plication of the testimony to the jury.   The exceptions do
not purport to  state all the evidence introduced at the trial,
and we cannot say that, in stating such principles, the jury
were misled, on the ground  that the evidence did not require

or admit of their application.    But as the case has been exhibited to us, the verdict appears to have been in accordance with the proof, and with the merits.

*Exceptions overruled.*