131    183
s134   612

## ANDERSON *v.* WIRTH.

1. PLATS—DISCREPANCY—BOUNDARIES.
   Where there is a shortage or a surplusage in the actual land platted into lots and blocks with intervening streets, and the original monuments indicating the limits of the lots have disappeared, each block should, if possible, be treated as distinct, and the shortage or surplusage therein be apportioned among the lot owners, except so far as possession has fixed the limits.

2. BOUNDARIES—LOCATION—SURVEY—EVIDENCE.
   Where, in ejectment, the issue was as to the exact location of

the boundary line between two lots, and plaintiff sought to show the location of the line by a surveyor who testified that he took as his starting point the center of a railroad track situated on a right of way bordering the block, and had assumed that the track was originally located in the exact center of the right of way, and had not been changed, it was error to reject defendant's offer of evidence that the track had been moved.

Error to Wexford; Chittenden, J. Submitted April 9, 1902. (Docket No. 40.) Decided June 24, 1902.

Ejectment by Andres P. Anderson against Henry Wirth. From a judgment for plaintiff, defendant brings error. Reversed.

*Sawyer & Bishop*, for appellant.

*U. S. Albertson*, for appellee.

MONTGOMERY, J. This is an action of ejectment to recover possession of a strip of land about six inches wide. The question involved is the location of the lot line between lots 5 and 6 of block 1 of the city of Cadillac. Harris street is a thoroughfare running east and west. It is crossed at right angles by three thoroughfares, in the order named, beginning with Lake street on the west, the Grand Rapids & Indiana Railroad right of way, 319 feet to the east, and Mitchell street, still 150 feet farther to the east, excluding from these measurements the ground occupied by the right of way. The space between Lake street and the railroad right of way, north of Harris street, was platted as block 1. The space between the right of way and Mitchell street was platted as block C.

The questions arising upon this record relate to rulings in receiving and excluding testimony. It is enough to say of the theories in the case that the plaintiff sought to establish the boundaries of block 1, and, if he was correct in doing so, and no error was committed in the receipt of testimony, the plaintiff was apparently entitled to recover

the premises in dispute.   The defendant contends that, not only did the plaintiff fail to establish the lot lines, but that it seems impossible to do so, and that the only fixed monuments now to be found would require that, in fixing the lot lines, a survey of both blocks 1 and C should be taken into account, and that, if there is a shortage,—as there is,—this should be deducted from the lots in both blocks.   It is manifest that this result should follow only as a last resort, and in case there has been no occupancy which precludes it.   If it is possible to do so, block 1 should be treated as distinct; and the shortage or surplusage of actual land in the platted portion distributed among the lot owners in this block, except so far as possession has fixed the limits.   It is not necessary to refer further to the law of the case, except to revert to the rulings as to the admission of testimony.

The plaintiff sought to show the location of this lot boundary by Mr. Alderman, the county surveyor.   He appears to have proceeded upon the theory that the center of the railroad track was precisely 50 feet from the western boundary of the railroad right of way as platted.   His theory upon this point, we think, is made clear by his testimony, which we quote:

" *Q.* You don't know, do you, whether or not the main track remains in the same place where it was laid when the track was first put down?

" *A.* No, I don't know anything about it.

" *Q.* Your 1899 survey was made upon the theory that it remains in the same place?

" *A.* Yes, sir; I supposed it was.   Yes, sir; I didn't contradict it any.   *   *   *

" *Q.* Now, let's begin with yesterday's survey.   What did you do yesterday?

" *A.* I went down to Lake street, and took the point on Lake street and Harris street.

" *Q.* You found the same corner you found before?

" *A.* Yes, sir.

" *Q.* What did you do then?

" *A.* I measured across block 1.

" *Q.* How far did you measure?

"*A.* I measured as far as the railroad limit.

"*Q.* How could you tell where the railroad limits were?

"*A.* I measured to the same place,—to the boundary,—supposed to be the boundary.

"*Q.* You measured to the same place that you had found before?

"*A.* Yes, sir.

"*Q.* Then, if you were right before, this last survey was right, and, if you were wrong before, this last survey was wrong, wasn't it?

"*A.* It was just the same as before.   *   *   *

"*Q.* Now, Mr. Alderman, I wish to ask you this question (I think it was answered at the last trial): If the main track of the Grand Rapids & Indiana Railroad has been moved since it was laid down, did you work upon the correct theory in ascertaining the true lot line?

"*A.* Why, if it had been moved an awful sight, it would make some difference, probably.

"*Q.* Wouldn't it make a difference if it had been moved at all?

"*A.* It certainly would, that much.

"*Q.* It would make the difference of the removal, wouldn't it?

"*A.* Yes.

"*Q.* You don't know whether it had been moved at all or not, do you?

"*A.* No, sir.

"*Q.* In surveying, you always proceed from fixed monuments, don't you, by way of measurements?

"*A.* Yes, sir.

"*Q.* Did you consider the railroad track a fixed monument in making this survey?

"*A.* Why, it seemed to be fixed; yes, sir.

"*Q.* You considered it a fixed monument?

"*A.* Yes, sir.

"*Q.* Now, if that fixed monument was not in the position in which it was placed by the plat, then it wouldn't be—the result arrived at by you wouldn't be correct, would it?

"*A.* Why, it seemed to leave more on the east side than it did on the west. The east line didn't seem to make the difference."

Notwithstanding this testimony, the circuit judge excluded testimony offered by defendant to show that the

railroad track was not where it was originally laid, unless accompanied by a proposition to show that it was originally laid in the center of the right of way. This ruling was manifest error, for the theory of the surveyor in making the survey was that the railroad track *was* located in the center of the right of way as platted. He took this as a monument, and, while it may not have been the only monument from which a jury could have found the lot lines, it was open to them, under this testimony, to find that this correctly fixed the lot line. We think this ruling was damaging error, and that the judgment should be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.