BERNARD MECHLER and AMELIA MECHLER, Plaintiffs, *v.* FRANK DEHN and ELIZABETH DEHN, Respondents.

(Supreme Court, Queens Trial Term, January, 1922.)

Boundaries — ejectment — disputes as to location of boundary line — conveyances according to map — generally excess should be divided or deficiency borne by all lots proportionately, but where map of plot shows lots of regular size and a few of irregular size the lots of irregular size are deemed remnants and bear the shortage.

Where land is conveyed by reference to a plan or map, and there is more or less in the entire tract which has been divided than the map shows, no grantee is entitled to any preference over the others and the excess should be divided among or the deficiency borne by all of the lots in proportion to their area.

Where, however, a map shows a plotting of a considerable tract and the creation of lots of regular width and depth, if a few of them are of irregular dimensions they are deemed to be the remnant of what remained of the entire tract after plotting the regular lots, and if there is a shortage in the entire frontage, the irregular sized lots must bear it, this, upon the assumption that it was the intention of the owner to get as many regular sized lots as possible and that whatever remained of the frontage was to go into the irregular shaped plot, and hence if he had more or less than the map showed, the difference in the frontage would affect only the irregular lots.

A map of a tract of land filed by the owner in the office of the county clerk showing 500 lots or more disclosed that it was his intention to create lots regular in shape with a width of 25 feet and a depth of 100 feet. According to the map the frontage of one of the blocks bounded north by a turnpike, east by an avenue, south by a street and west by the land of another owner, and in which lies the property of plaintiff and defendant, is 211 feet 3 inches along the avenue, but as matter of fact the block measures only 206 feet 2 1/8 inches. The owner laid out four lots fronting on the avenue and then, in the belief that there remained 111 feet and 3 inches, he made that the depth of the lot laid out as fronting on the turnpike. All deeds of the property in question, including those from the common owner, referred to the map, and it clearly appeared

that neither the plaintiffs nor their predecessor obtained title to a plot that extended 111 feet and 3 inches along the avenue. *Held,* in ejectment, a dispute having arisen as to the location of the boundary line between plaintiffs' and defendants' properties, that plaintiffs did not own 111 feet and 3 inches on the avenue but only 106 feet 2 1/8 inches, and that defendants were entitled to judgment, with costs.

ACTION in ejectment.

Joseph Danziger, for plaintiffs.

Leonard J. Langbein, for defendants.

CROPSEY, J. A dispute as to the location of the boundary line between plaintiffs' and defendants' properties in this ejectment action arises from the fact that the former owner of the entire tract thought there was a greater frontage in the block than in fact there was. In 1881 a party named Morton, owning a tract of land at Middle Village, Queens county, caused a map to be made plotting it into lots. Ten years later this map was filed in the clerk's office. The map shows some 500 lots or more. From it it is evident that it was the intention to, wherever possible, create lots regular in shape with a width of 25 feet and a depth of 100 feet. The properties in question lie in one of the blocks shown on this map. That block is bounded on the north by the Williamsburg and Jamaica turnpike, on the east by Morton avenue, on the south by Steuben street and on the west by property of another owner. According to the map the frontage of this block along Morton avenue is 211 feet 3 inches. As matter of fact the block measures only 206 feet 2⅛ inches. The land facing the turnpike is laid out into lots fronting thereon. The lot on the corner of the turnpike extends south along Morton avenue, according to the map, 111 feet 3 inches. The map shows four lots each 25 feet wide and 100 feet deep fronting on Morton avenue between the south-

erly end of the lots fronting on the turnpike and Steuben street. The other lots in this block front on Steuben street and each is 25 feet wide by 100 feet in depth, except the most westerly one which abuts on land of another owner, and that is 25 feet 6 inches in width by 100 feet in depth. The map carries the width of all the lots fronting on the turnpike, except one, as 25 feet. The most westerly one, that is the one abutting on property of another owner, is shown to be 22 feet in width. The map shows that the turnpike does not run parallel to Steuben street but that they slightly converge as they go toward the west. This appears from the fact that the easterly line of the corner lot (the one abutting on Morton avenue) is 111 feet 3 inches, as already stated, and the westerly line of the most westerly lot (the one abutting on property of another owner) is 100 feet, and the southerly line of all the turnpike lots is 100 feet from Steuben street.

The plaintiffs own lots Nos. 1 and 2. They front on the turnpike at the corner of Morton avenue. According to the map they measure 111 feet 3 inches on Morton avenue and extend to a point that is 100 feet north of Steuben street. The defendants own lot No. 27, which fronts on Morton avenue and abuts plaintiff's property. According to the map the northerly line of this lot is 111 feet and 3 inches south of the turnpike. This lot is 25 feet in width by 100 feet in depth. According to the map there are three other similar sized lots between it and Steuben street. The plaintiffs claim that they own 111 feet and 3 inches along Morton avenue. If they do then there remains but 94 feet and 11⅛ inches between their property and Steuben street. According to the map there is 100 feet between their property and Steuben street. The defendants claim the lot they own begins 75 feet north

**38**

of Steuben street and is 25 feet in width on Morton avenue. If that is so then the northerly side of their lot is 106 feet 2⅛ inches south of the turnpike. The question in dispute is who owns the strip that is 5 feet and ⅞ of an inch wide on Morton avenue and the northerly side of which is 106 feet and 2⅛ inches south of the turnpike. Or, to put it another way, as there is a shortage in this block who must bear it, or how should it be apportioned?

All the deeds of the property in question, including those from the common owner, refer to the map that has been mentioned. The references to it are not alike in all the conveyances but it is seemingly conceded that all the deeds do refer to it. The first deed from the common owner was made in 1886 to a party named Gebhard. This conveyed, besides other property, five lots in this block numbered 1, 2, 3, 4 and 5. According to the map these all front on the turnpike, lot No. 1 being on the corner of Morton avenue. After expressly designating these lots by their map number the deed says that taken together they " are bounded and described and contain as follows: viz. Commencing at a point on block 6 (VI) formed by the westerly side of Morton Avenue where it intersects with the southerly side of the Williamsburg and Jamaica Turnpike Road and running thence westerly along the southerly side of said Turnpike Road one hundred and twenty-five feet (125'); thence southerly parallel with Morton Avenue one hundred and seven feet and six inches (107' 6''); thence easterly parallel with Turnpike Road one hundred and twenty-five feet (125') to Morton Avenue; thence northerly along the westerly side of Morton Avenue one hundred and eleven feet (111') and three inches (3'') to the point or place of beginning, be the said measurements more or less." This description is erroneous, as it shows

upon its face, for it makes the plot a parallelogram by saying the opposite lines are parallel to each other but then contradicts this by giving dimensions which make it impossible. And as has been stated, the turnpike does not run parallel to Steuben street. This is also established by another survey in evidence. According to the map the southerly line of these lots is parallel to Steuben street, but not to the turnpike. It is evident the conveyancer was not sure of his data, for he wrote in that all the dimensions were " more or less."

The second deed from the common owner was made in 1898 to a party named Bermel. It conveyed five lots numbered 26, 27, 28, 29 and 30. The deed besides designating the lots by number stated " Said 5 lots containing 12,500 square feet more or less. Said lot being shown on the following diagram and agreeable to said map." There is no other description in this deed except as stated here. Nor is there any diagram or map attached to the deed. The map referred to in the deed is the one already mentioned. According to the map these five lots are each 25 feet wide by 100 feet in depth and contain exactly 12,500 square feet. Four of them, to wit, Nos. 27, 28, 29 and 30 front on Morton avenue and the other one, No. 26, fronts on Steuben street immediately in the rear of the other four. Lot No. 30 is at the corner of Steuben street and Morton avenue. Next comes lot 29 and then lot 28 and then lot 27.

These two deeds conveyed the entire frontage on Morton avenue between the turnpike and Steuben street and include the properties in question.

The next deed is by Bermel to the defendants. It was made in 1906 and conveyed lot 27. The only description in the deed was by lot number and the statement that it was part of the premises conveyed to Bermel by Morton.

The next conveyance was made in 1913 by Gebhard to the plaintiffs. This conveyed lots Nos. 1 and 2. It then says that those lots taken together are bounded and described as follows:

" Beginning at a point formed by the intersection of the Southerly side of Williamsburgh and Jamaica Turnpikes with the Westerly side of Morton Avenue, and running thence Southerly along the Westerly side of Morton Avenue, 111 feet, 3 inches; thence Westerly along the Northerly side of lot 27 on said map, fifty (50) feet; thence Northerly parallel with Morton Avenue 109 feet to the Southerly side of Williamsburgh and Jamaica Turnpikes; and thence Easterly along the Southerly side of Williamsburgh and Jamaica Turnpikes fifty feet (50) to the point or place of beginning."

This description does not agree with the map in one particular. It says that the length of the westerly boundary, that is the course that runs " northerly parallel with Morton avenue to the Turnpike " is 109 feet. The map shows this course to be 109 feet and 9 inches. The reference in this deed to lot 27, which is defendants' property, seems to refer merely to the lot as laid out on the map and not to the lot as occupied or possessed.

Upon the facts as stated I think it clearly appears that neither the plaintiffs nor their predecessor obtained title to a plot that extended 111 feet and 3 inches along Morton avenue. Had the frontage of that block been as represented on the map unquestionably such would have been the result. But that frontage was over 5 feet shorter than the map showed it to be. As the common owner had title to the entire block frontage if his first conveyance, which was to plaintiffs' predecessor, had conveyed a plot 111 feet 3 inches in depth along Morton avenue, and had not

made the conveyance by reference to the map, unquestionably title would have passed to the entire 111 feet and 3 inches. But this conveyance was by reference to the map and conveyed merely certain lots mentioned thereon. The fact that after describing the property by lot numbers on the map in question the deed set forth what was said to be a description of them by metes and bounds does not change the result. The map controls and not the dimensions in the deed. *Brainin* v. *N. Y., N. H. & H. R. R. Co.,* 136 App. Div. 393, 395; *Meyer* v. *Boyd,* 51 Hun, 291, 295; *Wessel* v. *Cramer,* 56 App. Div. 30, 32. While according to the map these lots extended 111 feet and 3 inches along Morton avenue the same map also showed that their southerly line was 100 feet north of Steuben street. Both of these distances could not be accurate because of the shortage. And the fact that the plaintiff's lots were first conveyed by the common owner under the circumstances appearing here makes no difference.

All that has been said concerning the conveyance to the plaintiffs' predecessor is equally applicable to the deed to the defendants' predecessor, except that in that deed there was no description other than by lot numbers. Both of these deeds from the original owner seem to show that there was some question as to the accuracy of the map. In the deed to plaintiffs' predecessor all the dimensions given are said to be " more or less." And in the deed to defendants' predecessor, while the area of the five lots is stated, it is said to be " more or less." But even if the area had been positively stated it would have been matter of description only (*Jackson* v. *Cole,* 16 Johns. 257, 261), and would not have controlled. The sale of the lots by numbers with reference to the map would have determined what passed by the deeds.

The general rule is that where land is conveyed by

reference to a plan or map, and there is more or less in the entire tract which has been divided than the map shows, no grantee is entitled to any preference over the others and the excess should be divided among or the deficiency borne by all of the lots in proportion to their area. *Coppin* v. *Manson,* 144 Ky. 634; *Anderson* v. *Wirth,* 131 Mich. 183; *Quinnin* v. *Reimers,* 46 id. 605; *Gloyd* v. *Franck,* 248 Mo. 468; *Marsh* v. *Stephenson,* 7 Ohio St. 265; *Booth* v. *Clark,* 59 Wash. 229; *Clayton* v. *Feig,* 179 Ill. 534; *Mosher* v. *Berry,* 30 Me. 83; *Parks* v. *Boynton,* 98 Penn. St. 370; *Westcott* v. *Craig,* 60 Col. 42; 4 R. C. L. 115. See, also, other cases cited in Anno. Cas. 1912–A, 1273–1275, note.

While this is the general rule there is an exception to it which I think applies here. It is this. Where a map shows a plotting of a considerable tract and the creation of lots of regular width and depth, if a few of them are of irregular dimensions they are deemed to be the remnant of what remained of the entire tract after plotting the regular lots and if there is a shortage in the entire frontage the irregular sized lots must bear it. This is held upon the assumption that the owner intended to get as many regular sized lots as possible and that whatever remained of his frontage was to go into the irregular shaped plot and hence if he had more or less than the map showed the difference in the frontage would effect only the irregular lot. *Baldwin* v. *Shannon,* 43 N. J. L. 593, 596; *Barrett* v. *Perkins,* 113 Minn. 480, 485. In the case last cited the court says (at p. 485): " In a situation like that the owner of the plat must be deemed to have intended to constitute the irregular remnant a lot by itself, regardless of its dimensions, and a purchaser thereof takes the whole remnant, whether of greater or less area than that indicated by the plat. It cannot be

enlarged at the expense of the owners of other lots, nor, if of greater area than shown by the plat, diminished in their favor. Though the rule might in a given case work a hardship to the owner of the remnant lot, yet in the case at bar the combined injury to the owners of the other lots, arising, if defendant be sustained, from the displacement of their improvements and the total elimination of the owner of lot 1, far outweigh any disclosed damage or hardship to defendant. The rule furnishes a definite and safe method and guide for the determination of mistakes of this nature.''

The same rule applies where plots of regular size are laid out on a map and a portion remains, the dimensions of which are not stated. *Pereles* v. *Gross,* 126 Wis. 122. But the same court which decided the case last cited has held that where all the lots are given dimensions upon the map they should bear any shortage ratably and that it should not be taken wholly from the one lot which is of different size than the others, thus holding to the contrary of the cases in New Jersey and Minnesota, above cited. *Pereles* v. *Magoon,* 78 Wis. 27. I think the reasons given in the other cases, however, justify the conclusions reached and that they state the correct rule.

This rule seems especially applicable here. The common owner plainly intended to create lots of a uniform width of 25 feet and a depth of 100 feet. He laid out four such lots fronting on Morton avenue and then believing there remained 111 feet and 3 inches he made that the depth of the lots that he laid out fronting on the turnpike. It cannot be supposed that had he known the frontage was only 206 feet and some inches he would have cut down the width of the 25 foot lots. The whole map is contrary to such a suggestion. Hence it follows that the plaintiffs do

**600** People ex rel. S. O. F. T. A. *v.* McMillan.

Supreme Court, January, 1922. [Vol. 117.

not own 111 feet and 3 inches on Morton avenue but only 106 feet 2⅛ inches.

The defendants are entitled to judgment with costs. New findings and judgment in conformity with this decision should be submitted upon notice.

Judgment for defendants.