BERNARD MECHLER and AMELIA MECHLER, Appellants, *v.* FRANK
DEHN and ELIZABETH DEHN, Respondents.

Second Department, November 3, 1922.

**Boundaries — ejectment action — title of parties from common source
— land of each carved from same plot — plaintiffs held under earlier
deed from common source which with all deeds in chain described
property by metes and bounds — defendants held under deeds which
did not describe property by metes and bounds — deeds overlap —
plaintiffs entitled to disputed strip — rule that irregular lot in plot
bear deficiency not applicable — rule of apportioning deficiency on all
lots in plot not applied — words " more or less " do not modify grantor's
intention shown by map and description — pending action for same
cause against one of defendants no bar to present action.**

In an ejectment action judgment will be directed for the plaintiffs where it appears
that the parties derive their titles from a common source and that their deeds
convey adjoining portions of the same plot which is so narrow that the land
described in the plaintiffs' deed overlaps that described in the defendants' deed,
resulting in a disputed strip of land which is the subject of the action; that the
deed from the common source under which the plaintiffs hold was the earlier
and it, and all the deeds following, describe the property by metes and bounds,
and make reference to a map while no deed in the defendants' chain of title from
the common source describes the property by metes and bounds, although
reference is made to a map in each, for the plaintiffs' grantor had a right to
rely on the description in his deed and on the map and also on the fact that,
as this was the first conveyance on that frontage, the entire frontage called for
by his deed was there on the ground.

The rule that where a map shows a plotting of a considerable tract, and the
creation of lots of regular width and depth, if a few of them are of irregular
dimensions they are deemed to be the remnant of what remained of the entire
tract after plotting the regular lots, and if there is a shortage in the entire
frontage, the irregular sized lots must bear it, is unsound and has no application
especially where the so-called irregular lots constitute, as in the present case,
approximately half the block.

The rule that where land is conveyed by a reference to a plan or map, and there
is more or less in the entire tract which has been divided than the map shows,
no grantee is entitled to any preference over the others and the excess should
be divided among, or the deficiency borne by, all of the lots in proportion to
their area, is unsound also and cannot be applied in the present case.

It cannot be presumed from the mere reference to the map in the descriptions
in the defendants' deeds that the grantor intended to convey those lots in
accordance with the frontage shown on the map, if it was there, or if not, then
in ratable proportion, and the words " more or less " cannot operate to modify
or alter the grantor's intention, shown by the map and the description.

The pendency of another action for the same cause against one of the defendants
is not a bar to this action.

BLACKMAR, P. J., and KELBY, J., dissent.

APPEAL by the plaintiffs, Bernard Mechler and another, from
a judgment of the Supreme Court in favor of the defendants,

entered in the office of the clerk of the county of Queens on the 30th day of January, 1922, upon the decision of the court rendered after a trial before the court without a jury at the Queens Trial Term, dismissing the complaint.

*Joseph Danziger,* for the appellants.

*Leonard J. Langbein,* for the respondents.

YOUNG, J.:

The action is in ejectment and involves the title to a strip of land in Middle Village, Queens county, five feet and seven-eighths of an inch, fronting on Morton avenue, and extending back fifty feet westerly, and being four feet, four and seven-eighths inches in the rear. The plaintiffs also ask for damages for the withholding by defendants of the premises in question.

The facts in this case are undisputed. Both plaintiffs and defendants derive their title from a common source. On June 15, 1886, Ann C. Morton was the owner of certain property shown on a map, entitled " Building lots for sale at Middle Village." This property was situated in block VI, as shown on the map and included lots 1, 2, 3, 4 and 5, and also lots 26, 27, 28, 29 and 30 in that block. On that day she conveyed to one Jacob H. Gebhard said lots 1, 2, 3, 4 and 5, describing them by lot numbers, according to the map, and also by metes and bounds, commencing " at a point on Block 6 formed by the westerly side of Morton Avenue where it intersects with the southerly side of the Williamsburg and Jamaica Turnpike Road." The description then continues along the turnpike road 125 feet, then southerly 107 feet, six inches, then easterly 125 feet to Morton avenue, and " thence northerly along the westerly side of Morton Avenue 111 feet, 3 inches to the point or place of beginning."

On June 30, 1913, Gebhard's executor conveyed to plaintiffs lots 1 and 2 in block VI, describing them by lot numbers as designated on the map, and also by metes and bounds as " Beginning at a point formed by the intersection of the Southerly side of Williamsburgh and Jamaica Turnpikes, with the Westerly side of Morton Avenue, and running thence Southerly along the Westerly side of Morton Avenue, 111 feet, 3 inches," and thence continuing the remaining courses and distances the same as shown on the map, to the point of beginning.

On February 14, 1898, Ann C. Morton conveyed to Joseph Burmel lots 26, 27, 28, 29 and 30, on the corner of Morton avenue and Steuben street, in block VI on the map in question, reciting that said lots contained 12,500 square feet, more or less, and that

9

Second Department, November, 1922.         [Vol. 203

said lot is shown on a diagram contained in the deed, " and agreeable to said map," but no such diagram appears. This deed contains no descriptions by metes and bounds.

On May 17, 1906, Joseph Burmel and wife conveyed to. the defendants lot 27, describing the same as shown on the map in question without any description by metes and bounds.

It appears from actual survey and is undisputed that the distance between the Williamsburg and Jamaica turnpike (now called Metropolitan avenue) and Steuben street, shown on the map as 211 feet, three inches, is, in fact, only 206 feet and about three inches. In other words, that the actual distance between the turnpike and Steuben street is 5 feet, seven-eighths of an inch, short of the distance shown on the map.

The defendants now occupy the strip in dispute. Their answer contains a separate defense that there is another action pending for the same cause, and the trial court has found that there is such an action pending against the defendant Frank Dehn.

Upon these undisputed facts, the trial court found that the description of plaintiffs' boundary on the westerly line of Morton avenue as 111 feet and three inches was erroneous, and was only 106 feet, two and one-eighth inches; that defendants were the owners of the remaining 100 feet on the westerly side of Morton avenue; and that they did not unlawfully enter into possession of plaintiffs' premises. As a conclusion of law, he found that the defendants did not encroach upon plaintiffs' land, nor withhold possession thereof, and were entitled to judgment dismissing the complaint upon the merits, with costs. (See 117 Misc. Rep. 591.)

The ground of this decision is a rule of law which obtains in some States. (*Coppin* v. *Manson*, 144 Ky. 634; *Anderson* v. *Wirth*, 131 Mich. 183; *Quinnin* v. *Reimers*, 46 id. 605; *Gloyd* v. *Franck*, 248 Mo. 468; *Marsh* v. *Stephenson*, 7 Ohio St. 264; *Booth* v. *Clark*, 59 Wash. 229; *Clayton* v. *Feig*, 179 Ill. 534; *Mosher* v. *Berry*, 30 Maine, 83; *Parks* v. *Boynton*, 98 Penn. St. 370; *Wescott* v. *Craig*, 60 Col. 42.) The learned trial court states the general rule to be that where land is conveyed by reference to a plan or map, and there is more or less in the entire tract which has been divided than the map shows, no grantee is entitled to any preference over the others and the excess should be divided among, or the deficiency borne by all of the lots in proportion to their area, citing numerous cases from other jurisdictions. But, he says, that there is an exception to this general rule: that where a map shows a plotting of a considerable tract and the creation of lots of regular width and depth, if a few of them are of irregular dimensions they are deemed to be the remnant of what remained of the

entire tract after plotting the regular lots, and if there is a shortage in the entire frontage, the irregular sized lots must bear it; that this is held upon the assumption that the owner intended to get as many regular sized lots as possible, and that whatever remained of his frontage was to go into the irregular shaped plot, and hence, if he had more or less than the map showed, the difference in the frontage would affect only the irregular lot, citing *Baldwin* v. *Shannon* (43 N. J. L. 596); *Barrett* v. *Perkins* (113 Minn. 480, 485).

Following this exception to the general rule as stated in his opinion, the learned trial court found that the entire deficiency should be taken from plaintiffs' lots, because they constituted the irregular lots in block VI.

There appears to be no decision in this State which precisely covers the situation presented in the case at bar, nor do the ordinary rules which have been adopted in this State seem to have any direct application.

I am unable to agree with the learned trial court in his final conclusion, which adopts the rule of law as to irregular lots laid down by the courts in New Jersey and Minnesota. I do not believe that this rule is sound in principle. A party who maps a plot of land into lots, whether regular or irregular in size, and gives them certain dimensions on the map, believed by him to be accurate, cannot, in my opinion, be held by any such strained construction to intend the irregular lots as a remnant regardless of its dimensions. On the contrary, I think he believes and intends that each lot shown on the map, regular or irregular, has, or should have, the dimensions ascribed to it. Especially is this true, in my opinion, where the so-called irregular lots constitute, as in the case at bar, approximately half the block.

A literal application of this doctrine might result, in case of a large deficiency, in the loss of all or nearly all of the irregular lots, although held under a conveyance prior to that of the regular lots.

The situation appearing in the two cases cited by the learned trial court in support of this doctrine was entirely different from that shown here. In *Baldwin* v. *Shannon* (*supra*) there were but two irregular lots out of fifty which were a division of what remained after making the other forty-eight lots, each of twenty-five feet front.

In *Barrett* v. *Perkins* (*supra*) there was a definite tract plotted and subdivided into lots of regular and specific dimensions, leaving at the end a remnant or irregular tract not sufficient to form a lot of the character of those laid out.

In my opinion, therefore, we should refuse to apply to this case the doctrine upon which the learned trial court's decision is based.

The rule as to apportionment of the deficiency among the lots in the tract is, in my opinion, equally unsound. There is no legal basis for any such doctrine, and its apparent justice will not stand the test of analysis.

The case of *Jackson* v. *Cole* (16 Johns. 257), while it does not cover the precise point presented in the case at bar, would seem to indicate that the doctrine of apportioning a deficiency of land among all the lots in the tract was not favored by our courts. In that case, which was an action of ejectment, it was held that a sale to defray the expenses of survey of 50 acres of each lot in the military tract vests a complete title in the purchaser, which cannot be affected by showing that there was a mistake in the original survey according to which patents were issued, and that those 50 acres ought to be added to an adjacent lot in which there was a deficiency of land, in order to give it the full quantity of 600 acres, and that in all cases the boundaries of lots in the military tract depended upon the actual survey and location, and not upon the description in the patent and the map filed by the Surveyor-General in the office of the Secretary of State, so that if by an error in the actual location, one lot falls short of 600 acres, and an adjacent lot has an excess equal to the deficiency, the deficiency of the former cannot be supplied out of the excess of the latter.

Of course, in the case last cited the decision turned upon the actual location of the lots in question, which was controlling over the patent description, by which each lot was to contain 600 acres. But it seems to me that the reason for that decision is, to some extent at least, applicable here. In other words, the mere fact that one grantee, through a mistake in the original survey, obtained less than his full 600 acres did not justify the taking of such deficiency from another grantee of a lot containing a surplus. With equal force, it seems to me the defendants in the case at bar should not have their deficiency in frontage supplied at plaintiffs' expense from lands clearly conveyed to the latter.

In the case at bar the original grantor clearly intended to convey in the deeds to plaintiffs' and defendants' predecessors in title 211 feet, three inches of land fronting on Morton avenue, 111 feet, three inches to plaintiffs', and 100 feet to defendants' grantor. Her grantees intended likewise, in accepting such conveyance, to secure that amount of land. Had there been no map, concededly, as stated in the opinion of the trial court, plaintiffs' predecessor in title having the first conveyance would obtain title to the entire 111 feet, three inches. How, by any legal principle, can the mere existence of the map and reference thereto, in the descriptions in the deeds, affect plaintiffs' legal right, except by arbitrarily

correcting the mistake and apportioning the deficiency, without any sound legal reason for such apportionment?

I do not think we are at liberty to presume from the mere reference to the map in the descriptions that the grantor intended to convey those lots in accordance with the frontage shown on the map, if it was there, or if not, then in ratable proportion. I am unwilling to carry legal presumptions to any such extent. In my opinion, the mere statement of such a proposition shows its unsoundness.

The use of the words " more or less " cannot operate to modify or alter the grantor's intention, shown by the map and the descriptions. It certainly could have no such effect upon the first conveyance to plaintiffs' grantor, because, measuring from the point of beginning, the lots as laid out on the map contain the frontage called for by the deed, and that amount of frontage existed and had not then been conveyed. When the subsequent conveyance of the remaining frontage on Morton avenue was made, the grantor intended, of course, to convey 100 feet, believing that that frontage remained. But it is equally certain that she could not, and did not then intend to convey more than she had. Therefore, she conveyed to defendants' grantor only what was left, or about 95 feet. I do not see that the fact that the lots are shown on a map and their description in the deed made by reference to that map in any degree alters this result. To correct the original mistake by an apportionment of the deficiency would be a purely arbitrary determination by the court which could in no sense be called judicial. Plaintiffs' grantor had a right to rely on the description in his deed and on the map, and also on the fact that, as this was the first conveyance on that frontage, the entire 111 feet, three inches called for by his deed was there on the ground. No survey was necessary to determine this fact, nor was he bound to know that there was a deficiency in the block. On the other hand, defendants' grantor knew when he received his conveyance that he could obtain only what was left. He could then do one of two things, either determine for himself the correctness of the map and description by a new survey, or accept the deed and rely on the covenants against his grantor for damages for any deficiency. He did the latter. Why then should plaintiffs now be called on to make up any portion of this deficiency?

In my opinion, therefore, the judgment should be reversed and judgment directed for the plaintiffs for the relief asked for in the complaint.

It only remains to consider whether this judgment should be directed against both defendants, or whether the pendency of the

former action against the defendant Frank Dehn bars a recovery against him in this case.

As to the pendency of the former action, it seems to be the rule that in order to operate as a bar such former action must be between the same parties and for the same cause. While the first action is found by the court to have been for the same cause against the defendant Frank Dehn, the plaintiffs have joined in the present action an additional defendant, and I do not think, therefore, that it comes within the rule. (*Geery* v. *Webster*, 11 Hun, 428, 430; *Continental Securities Co.* v. *Interborough R. T. Co.*, 118 Misc. Rep. 11, 21.)

KELLY and MANNING, JJ., concur; BLACKMAR, P. J., and KELBY, J., dissent, and vote to affirm.

Judgment reversed upon the law and the facts, and final judgment directed for plaintiffs, awarding them possession of the premises described in the complaint. The findings of fact numbered third, fourth, fifth and sixth, and the conclusions of law contained in the decision of the trial court, are reversed; and this court finds as facts that the plaintiffs are owners and entitled to possession of the premises described in the complaint, and that the defendants did on or about May 17, 1906, unlawfully enter upon and withhold from plaintiffs the possession thereof; and, as conclusions of law, that the defendants have and do encroach upon the lands of plaintiffs and did unlawfully enter upon and withhold, and are in possession of said lands of plaintiffs, and that plaintiffs are entitled to judgment awarding to them possession of said premises, with costs in the court below and in this court. Settle order before Mr. Justice YOUNG.