CHESTER H. HOOTMAN v. JACOB C. HOOTMAN ET AL.,
Appellants.

**Boundaries:** ASSUMPTION AS TO EXTENT OF CLAIM. Where neither landowner has occupied up to a particular boundary for a sufficient length of time to establish title by adverse possession, or to raise an inference of acquiescence, either party has the right to assume that the other is claiming only the land described in the deed under which he holds possession.

**Boundaries:** EXCESS IN ACREAGE: DIVISION OF SAME. Where defendant bought the "west half" of a certain quarter section of land, paying a lump sum therefor, and measured off eighty rods; and thereafter plaintiff purchased the "east half" and adopted the line located by defendant, both supposing that the quarter contained one hundred and sixty acres when in fact it exceeded that number of acres, the deeds will not be reformed so as to convey to plaintiff all save the west eighty rods.

Half quarters and quarter quarter section corners are equidistant between the section and half section corners.

*Appeal from Van Buren District Court.— Hon. Robert Sloan, Judge.*

Monday, March 11, 1907.

The opinion states the case.    Both parties appeal, that of defendant being first perfected.— *Affirmed.*

*Wherry & Walker* and *Mr. McBeth,* for plaintiffs.

*Starr & Calhoun,* for defendant.

Ladd, J.— The S. W. ¼ of section 31, in township 70 N., of range 9 W. of the fifth P. M., contains 164.48 acres according to the United States survey.    A highway extends up the east line of the quarter about thirty-five rods, and then diagonally across it, leaving 121.98 acres west and south of the center of the road.    In 1896 T. L. Workman was owner of this last-mentioned tract, and on June 15th of that year executed a deed to John S. Watts of land described as " the west half of the southwest quarter of section 31," in said township, " containing in all 75 acres more or less." This included about five acres north of the highway belonging to Small, which was subsequently conveyed to him by Watts.    The latter deeded the land purchased by him from Workman to the defendant Jacob S. Hootman, January 5, 1900, with the same description, excepting that north of the center of the highway.    On the other hand, Workman conveyed to one Etka " the E. ½ of the S. W. ¼ of section 31, township 70, range 9 S. of the Mt. Zion and Birmingham Road, containing 45.98 acres more or less."    This was followed by a more particular description, but fixing the west line of the east half of the quarter section as the western boundary.    This description was substantially copied in a deed of the same land from Etka to Sherrod, November 7, 1898, and from Sherrod to Chester H. Hootman on March 1, 1899.    All the persons mentioned were made parties to the

action, and, with the exception of the present owners, were defaulted. The contention of plaintiff is that all these deeds, by mutual mistake, misdescribed the land intended to be conveyed; that Workman in fact sold to Watts, and Watts to defendant, a strip of land on the west side of the quarter section 80 rods wide, and sold to Etka, and Etka to Sherrod, and Sherrod to plaintiff, all of the quarter section east of a strip eighty rods wide and south and west of the center of highway. The land in dispute is a strip four and forty-eight one hundredths rods wide. While Workman knew the quarter section contained more than one hundred and sixty acres, other parties to the record were ignorant of that fact, until so advised by a survey of the county surveyor long subsequent to the execution of the several deeds. Watts testified that the deeds to and from him were as intended, but Workman stated that the bargain with Watts was for a strip eighty rods wide on the west side of the quarter, and he is strongly corroborated by the circumstances.

Undoubtedly, Watts supposed this to be the width of the west half of the quarter. They went on the land before the execution of the deed, and measured with a pole eighty rods east of the southwest corner of the quarter, and there set a stake. They then went to the north line, and, noticing a fence between the adjoining owners, Robinson and Small, to the north, accepted that as being eighty rods east of the western boundary, and from it sighted through to the stake, first set and established that as the line, staked it out, and subsequently erected a fence thereon, which, when erected, varied about a rod only from a straight line between the two points. The defendant was told by Watts, prior to the execution of the deed by the latter to him, about the way the line was determined, and that he was getting the land Workman had conveyed to Watts, but he was not advised that the line between Robinson and Small was accepted as being eighty rods east of the western boundary; nor was anything said indicating that he was not to have precisely

what the deed described. On the contrary, Watts told him that he did not know how much land there was; that he might accept the fence as the line, or have that between Robinson and Small extended to the south line. Nor was there anything in his conversation with plaintiff to put him on inquiry. If anything, it would tend to confirm his supposition that he was entitled to all the land in the west half of the quarter below the center of the road, for plaintiff said to him he thought the fence at the north end about two rods east of the division line, and it was that much east of the the true line, but about six and one-half rods east of the east boundary of an eighty-rod strip. So that, even if plaintiff mentioned the line as eighty rods east of the west boundary, he clearly indicated that he supposed that the line was merely an extension of that between Robinson and Small.

There is nothing in the suggestion that plaintiff's possession of part of the disputed strip imparted notice. Possession on neither side had continued long enough to establish

**1. BOUNDARIES: assumption as to extent of claim.** title by adverse possession, or to raise an inference that the boundary had been settled by acquiescence. In these circumstances, defendant had the right to assume that plaintiff was claiming the land only described in his deed under which he was in possession.

Nor can defendant be said not to be a purchaser for value. He paid a lump sum for the land conveyed to him in the deed, and that was precisely as intended by both parties

**2. BOUNDARIES: excess in acreage: division of same.** thereto. It is very clear, from the record before us, that the defendant is an innocent purchaser for value. There was nothing of record to put him on inquiry, nor was this done by anything *aliunde*. While he, with others, proceeded on the theory that the quarter contained but one hundred and sixty acres, he necessarily took the chances of there being less, and he ought not to be deprived of the advantage to be derived from

the discovery that there is more. Reformation was rightly denied, but defendant insists that the court erred in decreeing the boundary between the tracts to be a line extending from a point on the south line of the quarter section equi-distant from its corners to a like point on the north line. Surveys in this State are to be made in accordance with the rules established by Congress. *Gerke v. Lucas,* 92 Iowa, 79. The excess is always added to, or the deficiency subtracted from, the sections and half sections on western or northern boundaries of townships; but this rule does not apply to half-quarter or quarter-quarter sections. The corners of these are not designated by the government survey, and, under the acts of Congress approved February 11, 1805, April 24, 1820, and April 5, 1832, directing that " intermediate corners shall, at the same time be marked on each of said dividing lines, as nearly as possible equi-distant from the corners of the half section on the same line," in force at the time of this survey by the government, the boundary is necessarily a line drawn either north and south or east and west between the corners so marked. Sections 2396 and 2397, Rev. St. U. S. [U. S. Comp. St. 1901, page 1473].

The division line established by the district court was in accordance with the above rule, and its decree is approved. Two-thirds of the costs of this court will be taxed to plaintiff, and one-third thereof to the defendant.

On both appeals the decree is *affirmed.*