JOHN D. BARRETT and Another v. FREDERICK E. PERKINS and Another.[1]

February 17, 1911.

Nos. 16,872, 16,873—(238, 239).

**Deficiency in area of plat — shortage falls on irregular parcel.**

> Where a definite tract of land is platted and subdivided into lots of regular and specified dimensions, leaving at the end a remnant or irregular tract not sufficient from which to form a lot of the character of those laid out, and the plat indicates the size of all lots, including the irregular tract, and it subsequently appears that there is a deficiency of land to accord to each of the regular lots the dimension indicated by the plat if the irregular tract retains the area given to it, thus disclosing a clear mistake on the part of the person platting the land, the deficiency must fall upon the irregular tract, and not upon the regular and uniform lots. The same rule would apply in the case of an excess of land.

Action in the district court for Ramsey county to determine the boundary line between lot 17, owned by defendant Minnesota Pharmaceutical Manufacturing Company, and lot 18, owned by plaintiffs, and between lot 19, owned by plaintiffs, and lot 20, owned by defendant Frederick E. Perkins. The answer of defendant manufacturing company alleged, among other matters, that at the time of the platting of the land it was at first intended to embrace in one lot the irregular tract of land, lying southwesterly of the alley through said addition, which remained after surveying and laying out lots 1 to 20 inclusive, which irregular tract of land is the land included in lots 21 and 22 in the plat; that said plat was first made with that intention, and the distance along the southwesterly line of that portion of the plat was noted thereon as being 75.38 feet, but before said plat was completed it was decided to divide that irregular portion into two lots, numbering the same 21 and 22, respectively, making the width of lot 21 twenty-five feet, and that width of twen-

[1]Reported in 130 N. W. 67.

ty-five feet was noted upon the plat, but that the parties making the plat neglected to change the length of the southwesterly line of lot 22 by deducting therefrom the twenty-five feet included in lot 21, and allowed the length of the southwesterly line of lot 22 to appear as 75.38 feet instead of 50.38 feet. For a second defense the answer alleged adverse possession by defendant and its grantors since the year 1882. The defendant Perkins also filed an answer.

The case was tried before Kelly, J., who made findings of fact, and as conclusions of law found that the true boundary line between lots 17 and 18 was at a point on the northerly line of University avenue 175.38 feet westerly from the southeasterly corner of lot 22, and that the boundary line extended northerly to the rear of said lots at right angles to the center line of University avenue; that the true boundary line between lots 19 and 20 was at a point on the northerly line of University avenue 125.38 feet westerly of the southeasterly corner of lot 22, and the boundary line extended northerly to the rear of said lots at right angles to the center line of University avenue; and that the southeasterly corner of said lot 22 was at a point forty feet west of the north and south center line of section 33, township 29, range 23.

From an order denying plaintiffs' motion for a new trial, they appealed. From an order denying defendant manufacturing company's motion for a new trial, it appealed.

*Charles Bechhoefer* and *Edward P. Sanborn,* for appellants Barrett & Zimmerman.

*Edward Lucas* and *Charles G. Laybourn,* for appellant Minnesota Pharmaceutical Manufacturing Company.

*Taylor & Harris* and *John D. O'Brien,* for respondent.

BROWN, J.

Action to determine the boundary line between certain lots in Hughes' addition to the city of St. Paul. Defendant Perkins had judgment, and plaintiffs Barrett & Zimmerman and defendant Minnesota Pharmaceutical Manufacturing Company appealed from an order denying a new trial.

The facts are as follows: Hughes' addition is a replatting of a

113 M.—31.

part of lots 24, 25, and 26, and all of lots 27 and 28, of Merriam's
Outlots, as shown by the recorded plat.   Only that part of Hughes'
addition comprising lots 1 to 22, inclusive, is involved in the present
action.   To assist in understanding the controversy we here insert
a copy of the original Hughes plat:

This is to certify that Curtis A. Hughes & Marietta E. Hughes, his wife, owners
of the following described property, viz:—Beginning at the southeast corner of

lot Twenty-Four (24) of Merriam's Outlots, thence northeasterly on the line which divides lots Twenty-Four (24) and Twenty-Five (25) of said Merriam Outlots one hundred & eighty (180) feet; thence, northwesterly on a line parallel to southwesterly line of said lot Twenty-Four (24) fifty (50) feet; thence, southwesterly on a line parallel with southeasterly line of said lot Twenty-Four (24) one hundred & eighty (180) feet; thence, southeasterly on southwesterly line of said lot Twenty-Four (24), fifty (50) feet to a point of commencement; also, the southwesterly one hundred & eighty (180) feet of lots Twenty-Five (25) & Twenty-Six (26) and all of lots Twenty-Seven (27) and Twenty-Eight (28) of Merriam's Outlots—have caused the same to be subdivided & platted & hereafter known as "Hughes Midway Addition to the City of St. Paul, Ramsey Co., Minn." as shown by this map—& we do hereby give and dedicate to the public and for the public use forever the alley as shown to run through said property as this map indicates. Witness our hands & seals this thirtieth day of April, A. D. 1880.

Marietta E. Hughes.    [Seal.]<br>
Curtis A. Hughes.    [Seal.]

In presence of Harvey George.   Clarence H. George.

The larger figures 24, 25, 26, 27, and 28 indicate the Merriam Outlots, and the smaller figures, 1 to 22, inclusive, the Hughes lots here involved. The action was brought to determine the boundary between lots 18 and 19, but in fact involves the boundary between all the lots in this part of the plat. All the lots, except 22, have, according to the plat, a frontage of twenty-five feet on University avenue, and lot 22 a frontage of 75.38 feet. The distance between the outer boundary of lot 1 and Fairview avenue, the end of the plat, is insufficient to supply the number of lots given on the plat with the dimensions stated. So that beyond question there was a mistake in the preparation of the plat, or in the original survey, and the purpose of the action is to locate and correct it. The whole controversy in the court below narrowed down to the question whether lot 22 was or was not erroneously designated on the plat as a seventy-five-foot lot. The trial court in effect found that this lot was entitled to a frontage of 75.38 feet; and, if that conclusion be sustained by the evidence and the rules of law controlling the question, the case is at an end.

We are of the opinion that the learned trial court erred in the conclusion stated. The evidence is insufficient to sustain it. The court relied, in reaching its conclusion, chiefly upon the testimony

of witness Armstrong, county surveyor of Ramsey county. This witness, though apparently fair and candid, seems to have fallen into the initial error of adopting as correct the notation on the plat that lot 22 had a frontage of 75.38 feet on University avenue. Adopting that as a basis, he located a stake precisely that distance from the intersection of Fairview and University avenues, which he assumed was placed there by the original surveyor as the dividing line between lots 21 and 22. He confirms his view of the matter by surveys from the standpoint of other known and ascertained objects; but he did not locate or make any of his surveys or calculations from the point indicated by the plat as the commencement of the addition, namely, the southeast corner of lot 24 of Merriam's Outlots. And we are impressed that his testimony on the trial was founded entirely upon the assumption that lot 22 was of the dimensions indicated by the plat.

But, conceding for present purposes the correctness of the conclusion reached by the witness, his evidence served only to demonstrate the fact, concurred in by all the parties, that there was a mistake somewhere in the plat. There is not enough land within the platted tract to supply all the lots of the dimensions given on the plat, and this situation is not controverted. Giving to lot 22 a frontage of 75.38 feet results in moving each of the other lots twenty-five feet west, and in the end to completely extinguish or eliminate lot 1. In other words, there is a deficiency of land, and all the lots cannot be accounted for. In such a case the most the court is authorized to do, in the form of correcting the apparent mistake, is to apportion the deficiency among the several lots, and not eliminate one of them entirely, as the trial court in effect did in the case at bar.

The owner of lot 1 has as much, and it would seem a greater, right to have his property remain a part of the plat, as the owner of lot 22; the greater right, because lot 1 was first laid out by the owner of the plat, and beyond controversy, with the intention that it should be and remain a lot of the subdivision of the dimension indicated. The rule requiring an apportionment of either an excess or deficiency of land in such cases is well settled. Martz v. Williams, 67 Ill. 306; Miller v. Topeka, 44 Kan. 354, 24 Pac. 420; Lincoln

v. Edgecomb, 28 Me. 275; Quinnin v. Reimers, 46 Mich. 605, 10 N. W. 35; Porter v. Gaines, 151 Mo. 560, 52 S. W. 376; Pereles v. Magoon, 78 Wis. 27, 46 N. W. 1047, 23 Am. St. 389. The trial court was therefore in error, even from the standpoint of the testimony of witness Armstrong, in reaching the conclusion, in substance and effect, that lot 22 was entitled to remain with a frontage of 75.38 feet.

However, we are not to be understood as holding that the rule stated should have been applied to the facts in the case at bar. The rule applies more particularly to tracts of land subdivided into smaller tracts of specified and uniform dimensions, and not to a situation like that here presented. Here the owner of a definite tract of land intended, and his intention is manifest, to lay out as many lots of the uniform width of twenty-five feet as the tract would contain. This he proceeded to do, laying off twenty-one twenty-five-foot lots, after which there remained an irregular or triangular piece to be disposed of as a remnant. This he supposed was 75.38 feet at its base, and so noted it upon the plat. This, we are satisfied from the record, was a clear mistake. But it is not necessary to extend the opinion by a discussion of the matter. It is not important.

There is a deficiency of land to make up the number of lots with indicated frontage, and the rule in such a case is that the deficiency must fall upon the last or irregular tract; the remnant of the whole after laying out the lots of a uniform size. Baldwin v. Shannon, 43 N. J. L. 596. In a situation like that the owner of the plat must be deemed to have intended to constitute the irregular remnant a lot by itself, regardless of its dimensions, and a purchaser thereof takes the whole remnant, whether of greater or less area than that indicated by the plat. It cannot be enlarged at the expense of the owners of other lots, nor, if of greater area than shown by the plat, diminished in their favor. Though the rule might in a given case work a hardship to the owner of the remnant lot, yet in the case at bar the combined injury to the owners of the other lots, arising, if defendant be sustained, from the displacement of their improvements and the total elimination of the owner of lot 1, far outweigh any disclosed damage or hardship to defendant. The rule furnishes

a definite and safe method and guide for the determination of mistakes of this nature, and we adopt and apply it to the facts in the case at bar; and if on a new trial the fact remains the same the relief stated should be granted.

Order reversed, and a new trial granted.

JAGGARD, J., took no part.