[No. 7793.]

## WESTCOTT ET AL V. CRAIG.

SURVEYS—*Re-establishment of Interior Corners.* The method of re-establishing the interior corners of a section is fixed by the rules of the General Land Office, and many decisions of the courts. A judgment which, in a proceeding under C. XXIV of the Code, rejects the established method, will be reversed. (44.)

Where the whole line of a survey between remote corners is found to be variant from the length called for in the field notes, it is not permittd, in re-establishing lost intermediate monuments; to assume that the variance

arose from the defective survey of any part of such line, but in the absence of evidence to the contrary we must conclude that it arose from the imperfect measurement of the whole line, and distribute such variance between the several subdivisions of the line in proportion to their respective lengths. (45.)

*Error to Grand District Court.* Hon. CHARLES MCCALL, Judge.

Mr. DAVID P. HOWARD, Mr. RALPH W. MCCRILLIS, Mr. W. C. MATHEWS, for plaintiffs in error.

Messrs. BRYANT, NYE & MALBURN, Mr. A. T. MONSON, Mr. H. A. HICKS, Mr. CHARLES ROACH, for defendants in error.

*On rehearing, en banc.*

Opinion by TELLER, J.

The plaintiffs in error seek to reverse a decree of the District Court of Grand County, entered in a proceeding under Chapter XXIV, Code of Civil Procedure, R. S. 1908.

The matter in controversy is the boundary line between lots 9 and 16 of Section 6, Township 3 North, of Range 75 West. The location of that line depends upon the position of the corner common to sections 5, 6, 7, and 8 of said township.

That corner, if ever located in the original survey, has not, so far as is known, been since identified.

A commission appointed by the court made a survey and reported that the corner in question was in Grand Lake a short distance from its westerly shore. This result was reached by running a true line between the east quarter corner of section 7, and the north-east corner of section 6, and running the south boundary of section 6 from its south-west corner to the lake on the true line to the south quarter corner of section 4 (all of which corners the commission assumed to be properly identified), and making the intersection of the two lines thus run the location of the corner sought.

The court sustained objections to this report and find-

ing, and adopted a survey made for the defendants in error, plaintiffs below. It then again referred the matter to the commission with instructions to mark the boundaries in accordance with the court's findings. Decree followed this finding.

This survey, which is shown by Exhibit N, locates the southeast corner of section 6, on the land, some 400 feet south and a little west of the corner as located by the commission. This location is based mainly upon the field notes of the original survey, and meander corner 8, which is on the south side of the lake. The notes placed this meander corner 6.54 chains east of the southeast corner of section 6, and the survey adopted by the court located the corner in controversy 6.54 chains west of meander corner 8.

It is a hopeless task to reconcile the field notes with the location of the several corners which are accepted as genuine by both parties, which notes, also, fail correctly to locate the lake with reference to the identified corners, and accepted monuments.

The method of re-establishing interior corners is fixed not only by the rules of the General Land Office, but by numerous decisions of the courts. Neither the survey of the Commission, nor the Harris survey, adopted by the trial court, followed the established method. The latter survey, which is the only one we need consider, assumed the correctness of the notes by which the corner to be located is connected with meander corner 8, ignoring other calls which are in conflict with it.

It appears that there are serious variations between the distances as they actually are, and as given by the field notes; in which case it can not be assumed that any one portion of the distance named includes the whole of the excess or shortage found to exist in the whole line.

In the leading case of *Moreland v. Page,* 2 Iowa 139, the rule of apportionment, substantially conforming to the regu-

lations of the General Land Office, is announced as follows: "Where on a line of the same survey between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking subdivisional tracts, we are not permitted to presume merely that a variance arose from the defective survey of any part; but we must conclude in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the whole line, and distribute such variance between the several sub-divisions of such line in proportion to their respective lengths."

This case has been followed in numerous decisions, and the rule laid down is identical in principle with that by which an excess or shortage in the frontage of a sub-division is apportioned among all the lots affected.

We regard the rule thus announced as correct in principle; and it is supported by abundant authority.

There is no more reason for accepting as correct the call to meander corner 8 than any of the other calls which conflict with it. Indeed, it is not of the same rank as the calls in the original survey, the meander survey having been made primarily to determine the contour of the lake, and referring to sub-divisional lines only for that purpose.

To support the finding upon which the decree is based, we must assume not only the correctness of the distance given in the notes, but also that the surveyor correctly located the corner from which that distance was measured. We have no means of determining whether or not there was at that time a monument to locate that corner.

In this case there are known monuments, set in the original survey, both east and west and north and south of the lost corner; and with them as data the corner should be located by the method above prescribed, unless the lines as originally run can be fully retraced.

The former opinion is withdrawn; the judgment is re-

versed and the cause remanded with directions to proceed as herein indicated.

                    *Reversed and remanded.*

BAILEY, J., GARRIGUES, J., and SCOTT, J., dissent.

Decided December 4, A. D. 1914. Rehearing granted. Judgment reversed on rehearing October 4, A. D. 1915, and rehearing denied defendant in error.