## Elam, et al. v. Hickman, et al.

(Decided October 12, 1915.)

### Appeal from Boyd Circuit Court.

Boundaries—Adjoining Land Owners—Parties.—The owner of one city lot cannot maintain an action against the owner of an adjacent lot for the purpose of having the boundary line shifted in order that the complaining lot owner may get a share of the 18-inch surplusage in the whole city block as laid out by the original grantor when the other lot owners are not made parties and it does not appear that the original grantor was ever divested of title to the surplusage.

O. M. ELAM and JOHN W. WOODS for appellants.

JOHN T. DIEDERICH and J. B. WILHOIT for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is a controversy over a boundary line between the city lots of Elam and Hickman. These lots make up part of a block in Ashland, between 12th street on the west and 13th street on the east, and Central Avenue to the south, and Railroad alley to the north. The block, as laid out by the Kentucky Iron & Coal Manufacturing Company, in the year 1854, contains six lots, each fronting 50 feet on Central Avenue. Deeds were made by that company to its vendees for all the lots having the dimensions named. It appears, however, that there is a surplus of 18 inches in the block between 12th and 13th streets.

The division line in controversy relates to lots 55 and 56. These two lots are in the middle of the block. The parties got their title from a common vendor, John H. Maurer. The Elam deed was made October 3rd, 1903, and transferred title to lot No. 56, having 50-foot front, and also to the adjacent 5 feet of lot No. 55. Three days

later Maurer conveyed to Hickman the remaining 45 feet
of lot No. 55. The deed specified the beginning corner as
in the line of Central Avenue, and 155 feet east of the
corner of 12th and Central Avenue. Maurer inherited
the two lots from his father, who had owned them since
1873. The question here is whether, as between Elam and
Hickman, the Hickman corner is the one named in his
deed from Maurer, viz.: 155 feet east of the 12th street
corner, or whether a portion of the 18-inch block sur-
plusage shall be apportioned between these two lot own-
ers, and the corner in question be shifted further east, on
Hickman, in order that Elam may share in it.

In effect, the judgment of the lower court was to es-
tablish the corner and boundary between Hickman and
Elam as set forth in the deeds from Maurer, their com-
mon vendor. We are of the opinion that this judgment
was proper.

The boundaries in the Maurer deeds are minutely set
forth, and it is admitted that Elam and Hickman took
the land so conveyed, dimensions and all. There is no
allegation that Maurer owned or intended to convey any
more than he did convey, or that by oversight or other-
wise he failed in anything. This is not an action between
all the owners to apportion the surplusage in the block,
as neither they nor Maurer nor the original vendor have
been made parties. If the original vendor has ever been
divested of title to the alleged surplus, and it had been
made to appear that the surplus actually belonged to the
lot owners in common, it would not be proper in this ac-
tion to arbitrarily shift any corners of the lots in ques-
tion in either direction, in disregard of the rights or equi-
ties of the other lot owners.

In Smith & Preston v. Prewitt, 2 A. K. Marshall, 155,
where certain land was surveyed and patented with refer-
ence to one outside boundary, and granting 2,000 acres
each to two patentees, but it subsequently developed that
the boundary covered by these two patents was largely in
excess of 4,000 acres, the court adjudged the surplus to
be divided equally between them. This rule was followed
in Respass v. Farmer's heirs, 5 J. J. Marshall, 648.

But the situation here is more like that in the case
of Vance v. Gray, 142 Ky., 267, where the court said:

"If we were back at the parting of the ways and the
original grantors were before us, and the conditions had
not been changed, the case might possibly be worked out
along the lines mapped out in the case of Smith & Preston

v. Prewitt, *supra.* - But here, after the lapse of forty years, during which time conditions have changed, the property passed into other hands, and improvements been made thereon, it will readily be seen that upon no just or equitable principle could the rule adopted in those cases be applied." See also 5 Cyc., 973.

But Elam insists that the "record shows that the surplusage belonging to the two Maurer lots is there now unoccupied by anybody but Hickman." We do not understand that the record shows any surplus as *belonging* to the two Maurer lots, or that there has ever been an apportionment of it. It is true that the testimony of the City Engineer shows that in a number of other blocks laid out by the Kentucky Iron & Coal Manufacturing Company there was a surplus in varying amounts, and that this City Engineer and his predecessors in office set stakes in this and other blocks at the corner of several lots, and in so setting stakes the block surplusage was taken into consideration. It appears that the purpose of this work of the engineers was for fixing cost of street improvements. But there is no proof that Hickman or any owners in this block assented to such apportionment or did anything that could operate as an estoppel.

We are of opinion that the judgment of the lower court should be affirmed, and it is so ordered.