FUTCH, Associate Justice.
On October 5, 1894, a plat designated “S. P. Thomas Addition to Plant City, Florida” was filed for record in Hillsbor-ough County, Florida. This plat shows a subdivision of SE*4 of NEj4 of Section 29, Tp. 28 S, Range 22 E, into blocks, streets, alleys, and certain unmarked and undimensioned areas. Hereafter we will refer to this plat as “Thomas Addition.”
The blocks in the plat of Thomas Addition were not subdivided into lots prior to recording the plat.
This action involves Block 4, and the undimensioned and incidentally the undes-ignated parcel of land to the south of Block 4, as shown on the map of Thomas *505 Addition. Block 4 was deeded out by descriptions similar to those used in divisions of governmental sections so as to make eight lots of equal. size and dimensions within the block. Plaintiff, the appellee here, W. J. McDonald, who will hereafter be called “McDonald” is the owner of the lot in the NE corner of Block 4, where he built his house either in 1910 or 1911, and where he has since resided, except for about five years, and where he now resides. His deed, which is dated August 10, 1910, calls for “The North Fourth of the East Half of Block Four of S. P. Thomas .Addition to Plant 'City, Florida, according to the map or plat thereof ” as the same is recorded in “Plat Book 1, at page 74 of the public records of Hills-borough County, Florida”. (Emphasis is supplied.) He also owns the north half o>f the west half of the same block which he purchased in 1924, securing deeds with the like references to the plat of the Thomas Addition.
The defendant, J. P. Tyner, appellant' here, who will -hereafter be called “Tyner” is the record owner of “South half of the Northeast quarter, also known as the South half of the North half of the East half of Block 4 of S. P. Thomas addition to Plant City, according to the map or plat thereof as the same is recorded in Plat Book 1, at page 74, of the public records of Hillsborough County, Florida.” (Emphasis is supplied.) Tyner purchased and went into possession of the property on July 1, 1921. His predecessors in title had been in actual possession and living on the property since 1913 or 1914.
The four remaining owners in the block likewise hold title under deeds “according to the map or plat thereof” of the Thomas Addition.
The undimensioned parcel immediately south of Block 4 of the Thomas Addition appears on the plat as a narrow strip but its north-south dimensions is not shown on the plat and a recent survey shows that it is actually 60.4 feet north-south measurement. A glance at the plat' is all that is necessary to determine that it was not drawn to scale. However, the testimony of Mr. R. G. Merrin, a civil engineer who surveyed the property at the request of the attorneys for both McDonald and Tyner pays a high compliment to the accuracy of the measurements of the civil engineer, John Chipman, who surveyed the property in 1888. He says the actual measurements check quite accurately with his from the north to the south of Thomas Addition.
There are four homes on the west side of Evers Street, located, supposedly, in the east half of Block 4 of the Thomas Addition. The ownership of each appears to be based on a deed to one-fourth of the east one-half of said Block 4. The record is in conflict as to'which home was first built. However, they were all built, more than thirty years ago, and before the “Florida Boom” had made people “stake and line conscious”. Land was plentiful and “of what moment a few feet more or less”. As the witness Mrs. 'Cason said, “Judge, you will recall twenty-eight or thirty years ago surveyors were almost unheard of for people in moderate circumstances. We never thought of getting a survey.”
“Q. Now, what existed on the south side to enable you to place your lines - on the south side of your portion of the property? A. .We was supposed to have stepped it off and went halfway.
“Q. Then you say you stepped it off? A. That’s all.
“Q. , Who stepped it off for you? A. I did it myself.”
From the evidence it is clear that every house in the subdivision was located by guess save that of McDonald. Mrs. Cason, a witness and former owner of the Tyner property, testified that she stepped her boundaries off. Mr. McDonald appears to have had his northeast corner located at the time he built his house and to have ascertained his eastern frontage on Evers Street quite accurately when he built his sidewalk agreeable to the requirements of the city. Evidence of this fact is yet visible by the extra width of the McDonald sidewalk on the inside line, as shown by a photograph in the record.
Tyner and his predecessors in title have been in open, continous, and adverse pos *506 session of a portion of the south half of the north 'half of the west half of Block 4 since about 1914, and certainly since 1919. The evidence shows part of the garage built there in 1915 and that there was a fence inclosing this fraction of the west half of the block, with Tyner’s frontage on Evers Street; that citrus trees were planted on it as well as other plants; that a row of Australian pines marked this back line. A survey of the Tyner property “in occupation” on July 26, 1950, shows an “old fence” marking the west line claimed by Tyner. The amendment to Sections 95.18 and 95.19, F.S.A., relating to' the payment of taxes cannot be applied here, where title by possession and occupancy had been acquired before the amendment was entered. The land has been “usually cultivated or improved”.
Sometime after building his home (he says four or five years) McDonald received information that the block was longer from north to south than the plat showed it to be. This information came to him before 1919, when one of the houses on the east half of Block 4 burned and some one did some measuring. Plaintiff then knew, and knew when Tyner took possession of the property immediately to the south of his property in 1921, that at least part of the Tyner garage was on land he then claimed, because he thought the block was longer than shown on the plat. In other words, the three properties to the south of him, due to conditions we shall later discuss, each occupied more frontage on Evers Street than McDonald occupied.
Soon after Tyner moved onto his property in 1922, McDonald began to apply pressure ocn Tyner to move their joint property line further south so as to' give McDonald more frontage on Evers Street. The pressure gradually grew stronger and more irritating until 1925, when McDonald bought the north half of the west half of Block 4, well knowing where Tyner claimed his west boundary to be, and knowing of Tyner’s occupancy and use of the land. McDonald and his wife then intensified the pressure as to both the north and west lines of Ty-ner’s until Tyner built a fence on what he was willing to accept as his north line. McDonald then, in the latter part of the year 1950, instituted this suit against Tyner.
To begin with this was just a contest between McDonald and Tyner, but after the testimony was taken, the Chancellor ordered everyone having any interest in Block 4, including the City of Plant City, to be made parties defendant. The Bill was amended and the new parties were brought in as required by the Court. This was done over the protest and objections of Tyner seasonably made. Answers were filed by all parties who claimed title to land in Block 4, and answer was filed by the City of Plant City. Lienholders did not file answers, and no further testimony was taken. Final Decree was entered on February 11, 1952. So far as the record shows, the new or impressed parties were given no opportunity to furnish evidence or proofs. The Final Decree is attacked by assignments of error in its entirety.
The case appears to have been litigated and decided on the theory that in some way, not now shown or explained, that portion of the unnamed and undi-mensioned parcel of land between Blocks 4 ■ and 5 of Thomas Addition and which has not been occupied by the city, became part of Block 4. Such is not the case as we understand the law. The recorded plat to which all conveyances to land in Block 4 refer, gives a definite north-south length to Block 4. When the several conveyances described the parcels in Block 4 as “according to the map' or plat thereof,” none of the owners of land in Block 4 secured any ownership of land beyond or outside of Block 4 as shown on the plat, in the absence of a showing of some mistake or error in the original measurements or in the preparation of the plat. No such mistake or error is shown here.
The facts of this case are that “There is no question ¡here of conflict between the plat, the survey or the field notes.” The law is well settled that when a plat of lots in a block specifies the frontage of each lot, with one exception, any deficiency in the width of the block, will show on that lot, and its width wil'i be the length of the block, minus the sum of the width *507 of the other lots. Routh v. Williams, 141 Fla. 334, 193 So. 71, 73. We have no field notes of the original survey of Thomas Addition to Plant 'City, and no question of conflict between the plat, the survey, or the field notes. The recent survey made at the request of the original parties to this suit confirms the plat and the original survey. The length of Block 4 is governed by the certain dimensions of 232.40 feet on the east and 234.40 feet on the west, as shown on the original plat. No more sure or exact method of indicating the size of the lots in Block 4 could have been used than that which was used, to wit: making each lot by reference to the plat one-eighth of the area of Block 4. There is no exception to the uniform size of the eight lots in Block 4.
Since no evidence or testimony was taken in support of the answers filed by the several impressed defendants, there was not sufficient evidence or proofs to warrant the entry of Final Decree affecting any of the several parcels involved except those owned by McDonald and Tyner and, therefore, we •are not here concerned with the boundaries •of any of the other parcels nor with the ■ownership of the strip between Blocks 4 and 5, and we make no determination of those questions. The only question here is the common boundary between McDonald and Tyner in the North half of Block 4.
McDonald has shown no title, to any land except in the north half of the block as shown by the recorded plat. Tyner, by his pleadings and statements, concedes to McDonald a frontage on Evers Street of 63.35 feet, which is five and one-fourth feet more than McDonald’s record title calls for. Tyner, so far as McDonald is .concerned, has unquestionably established title by record and by possession to1 that part of Block 4 described as follows:
“From the NE corner of Block 4 of S. P. Thomas Addition to Plant City, as recorded in Plat Book 1, at page 74, public records of Hillsborough County, Florida, run thence South, 63.35 feet, along the East boundary of said Block 4, for a point of beginning; thence N. 89°2(y- W, 122.9 feet; thence S O0-^ E, 79.0 feet; thence N 89°-06' E, 122.0 feet, to the East boundary of said block 4; thence North 76.8 feet to the P.O.B.,”
and. the Final Decree should have so found and adjudged.
The decree should not have awarded title to McDonald to any part of Block 4 in conflict with the Tyneir property as above described nor south of the south boundary line of the north one-half of the west one-half of Block 4 according to the recorded plat of said Thomas Addition.
The final decree appealed from should be and it is hereby reversed, with directions to enter a final decree in accordance with this opinion and to assess all costs, including the costs of this appeal, against the plaintiff below, W. J. McDonald.
SEBRING, Acting C. J., and ROBERTS and MATHEWS, JJ., concur.