No. 18,342.

OREN L. GAINES *v.* CITY OF STERLING.
(342 P. [2d] 651)

Decided July 20, 1959.

Messrs. KREAGER & SUBLETT, for plaintiffs in error.

Messrs. SANDHOUSE & SANDHOUSE, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an action involving a boundary dispute. Plaintiffs in error, who are here by writ of error, were plaintiffs below and will be so referred to herein and defendant in error will be referred to as defendant.

Plaintiffs commenced a quiet title action under Rule 105, R.C.P. Colo., to adjudicate the location of the common boundary line between their property and property of the defendant. Plaintiffs have registered Certificate of Title No. 2134 to the East Half of the Northwest Quarter of Section 35, Township 8 North, Range 53 West of the 6th P.M. in Logan County, Colorado. Defendant has registered Certificate of Title No. 2851 to the West Half of the Northeast Quarter of the same section. Titles so registered are commonly known as Torrens Act Titles and are expressly provided for by statute in Colorado (C.R.S. '53, 118-10).

Though all of the land involved was not always held by a common owner, it now appears that prior to the acquisition of their respective properties by plaintiffs

and defendant both tracts of land were in one common ownership and while so owned in the year 1919 were registered along with other lands under the Torrens Title Registration Act. From the exhibits in the case, though no mention of it is made in the briefs filed in this court, it appears that defendant's title is now subject to two express mineral reservations, and that the owners of such reservations were not joined as parties in this action. Obviously no decree of the trial court or of this court could affect the rights, if any, of such parties to minerals which might be under the disputed area in question. Compare *Geiger v. Uhl* (1932), 204 Ind. 135, 180 N.E. 10; *Elam v. Hickman* (1915), 166 Ky. 135, 179 S.W. 17; *Falvy v. Sellers* (1928), 166 La. 207, 106 So. 853.

After the case was at issue in the trial court defendant moved to have a Commission appointed under C.R.S. '53, 118-11-1, et seq. Plaintiffs resisted this, urging the method was inapplicable to Torrens Act titles. However, the trial court correctly concluded that Rule 105 did not apply, and that the complaint stated a cause of action under the statutory proceedings for establishing disputed boundaries, and appointed Cecil J. Osborne, a registered professional engineer and land surveyor, as Commissioner to locate the correct corners and boundary line.

Plaintiffs contend that under the Torrens Act a title once registered thereunder becomes "forever binding and conclusive upon all persons" (C.R.S. '53, 118-10-30) and may not be reopened except as provided in 118-10-31, which methods of reopening do not apply to this situation. We point out that while construction of plaintiffs' deed and its legal effect are questions of law, the location of a boundary line is usually a question of fact, thus the Torrens Act can have no application to the settlement of a boundary dispute arising after registration of title whether between two registered owners or a Torrens holder and a non-registered owner. This, of course,

would not be true if the boundary question had first been raised in the proceedings to register the title for it could be properly determined at that time too. See *Balzer v. Pyles* (1932), 350 Ill. 344, 183 N.E. 215.

The evidence discloses that Section 35 is one of those parcels of land which is not standard in size, and that all original four section corners, as well as the original quarter section corners in question, had been obliterated, and at the time of suit were unmarked as to the original government survey. This does not mean that the section corners were "lost" corners, however, in the sense that they could not be relocated with some degree of accuracy by recognized natural or permanent monuments, or even by re-survey from township lines some miles away. See *Mason v. Braught* (1914), 33 S.D. 559, 146 N.W. 687, at page 689.

There is an old fence in the north half of the section running north and south approximately eighty feet west of where plaintiff contends the properties should be divided, and there is now a new fence generally parallel to the first fence and some eighty feet east therefrom which plaintiffs contend is the correct line. The latter fence was erected shortly before this action was commenced by defendant after its city manager and engineer had agreed with plaintiffs that the old fence was not the correct line. These city officials were later overruled by the defendant, and the old fence, which had been torn down in the meantime, was then replaced and resistance offered by defendant to plaintiffs' attempt to claim land east thereof.

After the Commissioner's report was lodged with the trial court pursuant to C.R.S. '53, 118-11-8, plaintiffs filed their exceptions thereto. Defendant filed its objections to the exceptions being heard, asserting they were not lodged in time. The trial court overruled defendant's contention and proceeded to hear the objections to the report as well as other evidence adduced by plaintiffs. Defendant in its answer brief fails to assign as

cross error the action of the trial court in proceeding with the hearing, thereby waiving its right to a determination of that issue here.

Following trial the court held that the Commissioner's report more nearly coincided with the original government survey than the two surveys of plaintiffs, and proceeded to apportion the strip in dispute by holding that plaintiffs own that portion which lies east of the old fence and west of a line drawn from a point which is thirty feet east of the old fence beginning at their southeast corner, said line running thence northerly to where the old fence line intersects the north line of section 35.

Plaintiffs' objections to the trial court's judgment can be summarized as:

1. The decree of the trial court results in the city acquiring title to plaintiffs' lands by prescription which is not possible as against a registered title.

2. The court committed error in appointing the Commission under C.R.S. '53, 118-11.

3. The court erred in adopting the report of the Commission instead of the plaintiffs' surveys.

As to the first objection, we have already commented on the procedure applicable. We have also pointed out that the appointment of the Commission was necessary and proper.

The third objection, however, has merit, as will hereafter appear.

The record discloses that the Commissioner appointed by the trial court proceeded to the nearest original governmental markers located some three miles away and then surveyed in to what he determined to be the north quarter corner of section 35. He then correlated this with an old irrigation filing and other monuments, including some grown over road ruts in the south half of section 35, to arrive at what he concluded was the original dividing line between the two properties in question. His "PLAT OF PERTINENT SURVEY DATA TO DIVIDE THE W ½ FROM THE E ½ SEC. 35 T 8 N R

53 W 6 P M." is defendant's exhibit No. 1. The surveyor's certificate thereon is replete with such unacceptable wording as " * * * As shown above by superimposing a *theoretical section* from the returned government dis-tances from the east side of the Township we find such a section as respects the line in question does intercept the old line and that fence which was *probably* on the west side of an old road did start and continue north for a half mile *very nearly* on such a line. At that time in all *probability* the fence was continued north from the end of the road and *necessarily* would have deflected to the east *if it was established* at a corner * * *." (Emphasis supplied.)

Defendant's exhibit one showed a final division of the section (and we note that none of the other owners of the section were parties to this action) apportioning the west half of the section 2578 feet along the north line and 2691 feet along the south line and apportioning the east half of the section 2740 feet along the north line and 2643 feet along the south line. Thus the disparity between the amount awarded plaintiffs as against that given to defendant could also result in a disturbance of other long established land titles in section 35. It also runs afoul of the rule of law which provides that no state can make any rule or law providing for apportionment contrary to Acts of The Congress. See *Knight v. Elliott* (1874), 57 Mo. 317; *Vaughn v. Tate* (1877), 64 Mo. 491; *Cordell v. Sanders* (1932), 31 Mo. 84, 52 S.W. (2d) 834.

Plaintiffs' evidence consisted of two surveys also prepared by registered professional engineers and land surveyors. Both of these surveyors proceeded to locate the lost corners of section 35 and then applied the rule of single apportionment within the section. This arrived at a north-south line that is the approximate line where the new or easternmost fence is now located, and equally divided the north half of the section from north to south.

Commissioner Osborne testified that he at no time during his study and survey as the court appointed Com-

missioner established the exterior corners of section 35 to his satisfaction and that he located his proposed dividing line without reference to such corners. It thus is apparent that the Commissioner appointed by the trial court was in error in proceeding upon the theory that the property line in dispute should be based upon his theoretical reconstruction of the original government survey of the center line of section 35. This error is further magnified when the evidence discloses, as it did here, that all three surveyors agreed (and there was no evidence to the contrary) that the original government survey called for equal subdivisions within the section.

In *Westcott v. Craig* (1915), 60 Colo. 42, 151 Pac. 934, this court said:

"The method of re-establishing interior corners is fixed not only by the rules of the General Land Office, but by numerous decisions of the courts."

The court in *Westcott* proceeded to quote from the leading case of *Moreland v. Page* (1856), 2 Iowa 139, what it describes as the correct rule of apportionment conforming to the regulations of the General Land Office:

" 'Where on a line of the same survey between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking subdivisional tracts, we are not permitted to presume merely that a variance arose from the defective survey of any part; but we must conclude in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the whole line, and distribute such variance between the several sub-divisions of such line in proportion to their respective lengths.' "

The Colorado court then commented:

"This case has been followed in numerous decisions, and the rule laid down is identical in principle with that by which an excess or shortage in the frontage of a subdivision is apportioned among all the lots affected.

"We regard the rule thus announced as correct in principle; and it is supported by abundant authority."

This decision was followed as to the method of locating lost corners in *Resort Co. v. Stevens* (1924), 76 Colo. 131, 230 Pac. 121.

The *"Manual of Instructions for the Survey of the Public Lands of the United States, 1947,"* section 376, at page 298, before the trial court, states:

"All lost (obliterated) quarter-section corners on the section boundaries within the township will be restored by single proportionate measurement between the adjoining section corners, after the section corners have been identified or relocated." (Wording in parenthesis added.)

C.R.S. '53, 136-1-1, provides:

"Whenever a surveyor is required to make a subdivision of a section, as established by the United States survey, he shall proceed as follows: Commencing at either quarter-section corner of the section, he shall proceed to run two lines respectively, to the opposite quarter-section corners, and at the point of their intersection establish a post which shall mark the interior quarter-section corner for that section. Any less subdivision shall be made by proceeding in the same manner, all interior posts being established by the point of intersection of lines, bisecting opposite sides; provided, that all fractional quarter-sections shall be so divided as as to give to occupants of any part thereof the quantity of land which shall be held to appertain to such part, at any United States land office in this state."

■ The general rule (known as the apportionment rule) is that where a tract of land is subdivided into parts or lots, title to which becomes vested in different persons, none of the grantees are entitled to a preference over the others upon the discovery of an excess or deficiency in the quantity of land contained in the original tract. The excess or deficiency is then divided among all the lots or parcels in proportion to their areas. See 97

A.L.R. 1227-1228, et seq.; and 11 C.J.S. 737-39, *Boundaries,* sec. 124-25.

Some limitations and exceptions have inevitably grown up to invade the pure application of the apportionment rule. It has been applied when the original surveys were made at the same time and so are held to have equal standing. See *Pandem Oil Corp. v. Goodrich* (1930), Tex. Civ. App., 29 S.W. (2d) 877, reversed on other grounds (1932), 48 S.W. (2d) 606. Another court has applied it only as a last resort. *Chandler v. Hibberd* (1958), ...... Cal. App. (2d) ......, 332 P. (2d) 133. It has been limited to each block within a subdivision. *Tyner v. McDonald* (1953) (Fla.), 63 So. (2d) 504. And at least one court has refused to apply it at all where possessory rights have intervened. *Vance v. Gray* (1911), 142 Ky. 267, 134 S.W. 181. The *remnant rule* has been applied to limit it and to apply to lots or parcels sold under a plan with the last grantee receiving only what is left. *Barrett v. Perkins* (1911), 113 Minn. 480, 130 N.W. 67; *Adams v. Wilson* (1902), 137 Ala. 632, 34 So. 831; and *Geiger v. Uhl,* supra. Yet the latter rule has been rejected and vigorously attacked by a New York court as not being what the grantor intended. *Mechler v. Dehn* (1922), 203 App. Div. 128, 196 N.Y.S. 460, affirmed without opinion in (1923) 236 N.Y. 572, 142 N.E. 288.

█ Other rules have grown up to solve controversies which have arisen as to this problem under government sections such as we have here. One of these widely applied is that interior lots in the extreme northern and western tiers were to contain the legal number of acres and any excess or deficiency is always to be thrown on the exterior lots. *Keesling v. Truitt* (1868), 30 Ind. 306; *Grover v. Paddock* (1882), 84 Ind. 244; *Fuelling v. Fuesse* (1909), 43 Ind. App. 441, 87 N.E. 700; *Knight v. Elliott,* supra; *Vaughn v. Tate,* supra.

A modification of the above rule that any excess or deficiency in fractional sections is to be placed upon the

exterior lots is that it has no application to interior sections. See *Suit v. Hershman* (1917), 66 Ind. App. 388, 118 N.E. 310; *Hootman v. Hootman* (1907), 133 Iowa 632, 111 N.W. 60.

Most courts recognize a distinction between the application of the rules relating to government surveys as between correct original surveys and their application where the original surveys are found to have been erroneous or the original corners and lines have been wholly lost. In the latter case the surplus or deficiency is apportioned in most states but not all. See 97 A.L.R. 1233-1234, in which the Colorado case of *Westcott v. Craig,* supra, is cited among cases from many other jurisdictions following the reasoning in *Moreland v. Page,* supra, that there should be a clear application of the apportionment rule without regard to the distinction above mentioned.

The rule which we now adopt as being fair and just and in harmony with the Acts of Congress and the regulations of the United States Public Land Office, as well as the previous decisions of this court, is: Regardless of whether there was either a common original title or a later common title to a section or a fraction of a section, where section and quarter-section corners have been obliterated and there is an interior boundary line dispute with no adequate evidence before the trial court of the correct possessory lines, the correct rule to determine an interior quarter-section line is first to re-locate the exterior section corners, and then proceed to locate the quarter section corner by applying the procedure set out in C.R.S. '53, 136-1-1. This statute applies the principle of the single apportionment rule. It also correlates with the *Manual of Instructions for the Survey of Public Lands* heretofore mentioned. As urged by plaintiffs, it has the sanction of the statute, most case law, and the bureau of public lands regulations. We apply it without regard to the order of the conveyances by a common grantor. See *O'Brien v. McGrane* (1871), 27 Wis. 446.

The rule does not mean, however, that the *exterior* west and east boundaries of these tracts are settled thereunder in view of the Acts of Congress and federal regulations relating to how apportionment of excesses within a section are to be made.

■ The theoretical reconstruction of the original government survey of the north-south center section line, with reference to the old fence line, has no application to this dispute, there being no evidence that the so-called old fence was established as a boundary line or agreed upon or accepted as such by these parties or by their predecessors prior to the registered owner. We conclude that the Commissioner's method as adopted by the trial court failed to follow the proper rule of surveying applicable here.

The judgment and order of the trial court is reversed with instructions to appoint another Commission under C.R.S. '53, 118-11-8, which Commission shall be instructed to re-locate the section corners of said section 35, and then to apply the single proportionate method of locating the quarter-section corner on the north line of said section; the north-south dividing line in the north half of the section then to be determined by the statutory and usual surveying practices applicable thereto; the parties to be given leave to amend their respective pleadings as they may be advised.