No. 19,238.

ARTHUR V. BRACKETT, ET AL. *v.* JOHN M. CLEVELAND, ET AL.
(363 P. [2d] 1050)

Decided July 24, 1961.   Rehearing denied August 21, 1961.

Mr. CARL H. NOEL, for plaintiffs in error.

Messrs. DOLAN AND DOLAN, Messrs. HOLLAND AND HART, Mr. PHILLIP A. DANIELSON, Mr. DWIGHT K. SHELLMAN, JR., for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE Bracketts filed a proceeding under R.C.P. Rule 105 in the trial court to establish boundaries and adjudication of rights in real property against the Clevelands and others. After some preliminary proceedings the action was changed to one under the provisions of C.R.S. '53, 118-11-1, et seq., for the establishment of lost, destroyed and disputed corners and boundaries. The Clevelands and their co-defendants then became plaintiffs below. We shall refer to the parties either by name or as they appeared below in the realigned proceedings wherein the Clevelands and others were plaintiffs and the Bracketts were defendants.

The dispute is over determination of the correct

boundaries of the Clem Thomas Placer Claim now owned by the Bracketts. The Clem Thomas was surveyed and patented in the early 1870s as an irregularly shaped placer claim along Four Mile Creek in Boulder County. It was surveyed prior to the approval of the official United States survey, and was the first parcel of land patented in the area.

Subsequently the lands surrounding the Clem Thomas were given "lot numbers on official United States plats, and were patented as lots contiguous to and bounded by the boundaries of the Clem Thomas. The defendants' title is derived from the Clem Thomas patent; the plaintiffs' titles are derived from the "lot" patents; no question of title is at issue here.

In the years since the lots contiguous to the Clem Thomas were surveyed, all of the original monuments marking the corners and boundaries of the Clem Thomas have disappeared.

Basically the problem presented arises because the original Clem Thomas claim, according to part of its patent description, lies about one-half mile south of where defendants claim it should be, its precise location along Four Mile Creek to the north being the issue here. Normally, worked out placer claims might not be of much economic value, but here the exact location of the missing lines of the original survey are of great importance to all parties because at least some of the plaintiffs purchased their lots after having surveys made and then erected various improvements on what they believed to be their lands. As a result of the dispute over these lines, the present litigation was instituted.

Pursuant to the statute, Ben H. Parker, Jr., a licensed surveyor and a registered deputy United States mineral surveyor, was appointed Commissioner by stipulation to establish the boundaries and report thereon to the court.

The method adapted by the Commissioner in establishing the boundaries involved four steps: (a) locating existing monuments in the area from which record ties

to the original Clem Thomas corner monuments might be established; (b) running actual surveys between these monuments to check their correspondence with the records; (c) making alternative calculations to corroborate the accuracy of the work; and (d) establishing the corner monuments of the Clem Thomas at the points indicated by record survey ties from the most reliable existing monuments, using the standard compass rule to balance the small discrepancies between "record" and "found" distances and courses.

In understanding the Commissioner's approach to the problem, it is necessary to bear in mind that none of the monuments set to mark the courses and boundaries of the original survey of the Clem Thomas are in existence; none of the bearing trees established in said original survey are in existence at this time; the tie contained in the original survey is in error (placing the location about one-half mile south of Four Mile Creek as previously stated) and cannot be used in re-establishing the location of any of the corners and boundaries of the Clem Thomas at this time; hence the boundaries of the Clem Thomas are in dispute.

There had been, prior to the commencement of this action, no recognition or acquiescence by any of the parties or their predecessors in interest, of any boundary, corner or monument presently existing or having existed in the past which would mark the corners or boundaries of the Clem Thomas.

Defendants filed exceptions to the Commissioner's report. Following a three and one-half day trial and a personal inspection of the land by the trial judge, the report of the Commissioner was approved by the court and all costs of the action were assessed against the defendants. It is from this order and judgment that the defendants bring this writ of error.

In their argument here defendants urge five grounds for reversal:

1. The Commissioner's re-establishment of the placer

corners by balancing, apportioning and calculating is contrary to law.

2. The Commissioner erroneously changed the size and shape of the Clem Thomas when size and shape had been predetermined for him.

3. In locating the Clem Thomas on the ground, the Commissioner erroneously disregarded the primary evidence available to him.

4. There were inconsistencies and erroneous procedures of the Commissioner which should not have been approved by the court.

5. The trial court's assessment of all costs to the defendants was harsh, unjust and inequitable.

■ Concerning the first point, under the circumstances involved, the method used by the Commissioner cannot be called either illegal or erroneous. The method of balancing used was the conventional method of the "compass rule," specified in the "Manual of Surveying Instructions for the Survey of Public Lands of the United States," 1947, U.S. Government Printing Office. John E. Byron, an experienced surveyor of fifty years standing, in his testimony verified that the Commissioner had used the most appropriate method for relocating the corners. We have held that where section corners have been obliterated, and there is a dispute as to boundaries, the correct rule in determining these boundaries is first to re-locate the corners, *Gaines v. Sterling* (1959), 140 Colo. 63, 342 P. (2d) 651. The Commissioner had very little to work with, no original starting point for the survey, few precedents to guide him, and an admittedly erroneous patent survey perpetuated by the United States land maps; the latter being so not only from the fact that it was not within one-half mile of the actual location on the ground but being also so noted in an authorized survey in the records of the United States Land Office in Denver when two of the later adjoining placer claims were surveyed. On this point defendants urge that such field notes cannot

"amend" a patent description and that the Commissioner had no right to consider such records. This begs the question, however, for the issue is not what was the original patent description but where did it in fact exist on the ground. Cf. *Marr v. Shrader* (1960), 142 Colo. 106, 349 P. (2d) 706. Having been there first, as it in fact existed on the ground, and as it had to be reconstructed here, the later adjoining claims had to tie to it. Obviously defendants' view cannot be correct because their claim cannot be both on Four Mile Creek and one-half mile south of it as the patent indicates. If the ground involved is to be found we cannot see how else the Commissioner could have located it than as he did.

As to the second point, there is no evidence that the Commissioner changed the size or shape of the Clem Thomas. This was first determined at the time of patent by the corner monuments then on the ground. The courses and distances of the metes and bounds description used in the survey description and in the patent are subordinate to the actual corner locations in place. The Commissioner had to locate and re-establish the situs on the ground of the original monuments by the use of the best evidence and the best methods available to him, including the original patent survey in so far as it was applicable. The Commissioner did not, therefore, change the size or shape of the Clem Thomas. As we said in *Everett v. Lantz* (1952), 126 Colo. 504, 513, 252 P. (2d) 103:

"Consequently, the question here for determination is whether the record contains sufficient competent evidence of a survey, and, if so, the identification of the subdivisions of Township 51 North, Ranges 9 and 10 E, must be accepted, for, according to the evidence, it is an exact retracement of the original 1881 survey. If the acreage designated in the patents is inaccurate, that is a matter of which the patentees therein cannot complain. The undisputed testimony of qualified engineers established the boundary lines here questioned by a location

of the original monuments erected in making the 1881 survey, and, as we have said, the fact that this was done in making a dependent re-survey is wholly immaterial. The monuments of the original survey control. 'It is a general rule that the original corners as established by the government surveyors, if they can be found, or the places where they were originally established, if that can be definitely determined, are conclusive on all persons owning or claiming to hold with reference to such survey and the monuments placed by the original surveyor without regard to whether they were correctly located or not (citing cases).' "

In their third point defendants claim that the Commissioner erroneously disregarded the primary evidence available to him. However, the record does not bear this out. Having re-established other corners with certainty on the basis of competent evidence, the Commissioner was forced to fall back, in the case of corners No. 4 and 5, on the original field notes. According to the Commissioner, an error is indicated in the original survey in regard to one of these which apparently fell close to the stream bed; a spot apparently placered over as well as flooded in subsequent years. There is no evidence available today as to the location of either of these corners except the original survey. As a result of the apparent error in the original survey, there is an inconsistency of thirty feet which the Commissioner's survey has to correct if the other proved corners of the Clem Thomas are to mean anything. Defendants object strenuously to this, but under the facts we must say without avail because it is still the actual ground location that governs not the legal description which has been proved erroneous.

In this connection we note the record indicates that defendants did not provide all the items of evidence they had stipulated to. The missing evidence includes the survey data under their control. Nor did defendants put their own surveyor on the stand. Accordingly, they can-

not be heard to complain that the commissioner failed to. consider all the primary evidence when the only known part not before him is that which defendants withheld.

They further complain of alleged inconsistencies and erroneous procedures by the Commissioner. They say that the Commissioner held hearings and examined witnesses without authority and without proper procedure being followed to allow for cross examination. This is not borne out by the record. The Commissioner did have both plaintiffs and defendants point out to him all known corners and monuments on the ground before he began his work. There is no evidence that this governed his survey. This was a normal procedure in surveying and cannot be said to come within the category of holding hearings or examining witnesses in the legal sense.

■ We have pointed out elsewhere our conclusion, upon reviewing the record, that the survey here at issue was competently and properly performed. The problem for the Commissioner was complicated by the fact that the "Manual of Instructions for the Survey of the Public Lands of the United States" contains no instructions for the restoration of mineral survey corners or lines. The Commissioner utilized therefrom the instructions applicable to the restoration of non-riparian meander lines, technically the problem most similar to that in hand. As a matter of fact, the "compass rule" employed by him is· set out as the most acceptable method for many types of resurveys in that manual. Cf. *Gaines,* supra.

■ Finally, defendants seek to upset the trial court's assessment of all costs of the action against them. C.R.S. '53, 118-11-11, provides that the costs of such actions shall be taxed as the court thinks just. We find no abuse of discretion here and see no reason to reverse the trial court's ruling. The defendants have had the opportunity to present their facts three times: first to the Commissioner, then the trial court, and now this court.

The judgment is affirmed.

Mr. Justice Day and Mr. Justice McWilliams concur.